[No. B080747. Second Dist., Div. One. Jan. 31, 1995.]

MAUREEN MERO, Plaintiff and Appellant, v.
ARMIN SADOFF, Defendant and Respondent.

**COUNSEL**

Horton, Barbaro & Reilly and William O. Humphreys for Plaintiff and Appellant.

Kirtland & Packard and David S. Brown for Defendant and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Maureen Mero appeals from a summary judgment in favor of defendant Armin Sadoff, M.D.

### STATEMENT OF FACTS

The following facts are undisputed: On November 14, 1989, plaintiff injured her back while at work for Shell Oil Company (Shell). She filed a claim for workers' compensation benefits from Shell. At the time, Shell was self-insured.

In her claim, plaintiff complained of orthopedic injury, including back pain. In the workers' compensation action, Shell requested that plaintiff

submit to an examination by defendant concerning her complaints of orthopedic injury; plaintiff agreed to do so.

Defendant had been retained by Shell's defense counsel, Mullen & Filippi, to perform a physical examination of plaintiff, to take and interpret X-rays, review medical records, and utilize testing devices in order to evaluate plaintiff's status for Shell. Defendant examined plaintiff on October 18, 1990. Defendant was not plaintiff's personal physician or orthopedist, and plaintiff did not pay for the examination. Defendant did not offer plaintiff any medical advice or a medical opinion. Plaintiff submitted to the examination only because Shell requested that she do so.

After the examination, defendant prepared a report for Mullen & Filippi containing his evaluation of plaintiff. Defendant was paid for his work by Shell. Plaintiff received a copy of the report; she did not rely on it for treatment or advice.

Plaintiff alleged in her complaint that she was injured when, during the course of defendant's examination, she was negligently "strapp[ed] . . . into an apparatus which caused her body to be contorted and maneuvered in various damaging positions." As a result of this negligence, she suffered "a total collapse and deterioration of the spinal fusion at L5 performed in May of 1990 . . . severe, permanent and disabling injuries as w[e]ll as great mental and physical pain, suffering and emotional distress." She additionally incurred medical bills and suffered a loss of earnings and earning capacity.

CONTENTIONS

I

Plaintiff contends the trial court erred in granting summary judgment, in that, even in the absence of a physician-patient relationship, a physician is liable to an examinee for negligence or medical malpractice for injuries incurred during the examination itself.

II

Plaintiff further contends summary judgment erroneously was granted, in that a negligent act which causes physical injury is not a broadcast or publication entitling the actor to immunity.

DISCUSSION

I

Plaintiff contends the trial court erred in granting summary judgment, in that, even in the absence of a physician-patient relationship, a

physician is liable to an examinee for negligence or medical malpractice for injuries incurred during the examination itself. We agree.

It long has been held that an essential element of a cause of action for medical malpractice is a physician-patient relationship giving rise to a duty of care. (*Felton* v. *Schaeffer* (1991) 229 Cal.App.3d 229, 235 [279 Cal.Rptr. 713], review den. Aug. 1, 1991; *Keene* v. *Wiggins* (1977) 69 Cal.App.3d 308, 313-314 [138 Cal.Rptr. 3].) Thus, as a general rule, where a physician is hired by a third party to examine plaintiff and report on the results of that examination, the physician is not liable to plaintiff for negligence in conducting the examination and making the report. (*Felton, supra,* at p. 235; *Keene, supra,* at pp. 313-314.)

In *Keene* v. *Wiggins, supra,* 69 Cal.App.3d 308, plaintiff was examined by defendant physician at the request of his workers' compensation carrier. He alleged medical malpractice in defendant's preparation of a report for the carrier, on which report plaintiff relied to his detriment. (At p. 311.) Defendant obtained a summary judgment on the ground he owed no duty to plaintiff. (*Id.* at pp. 310-311.)

The court observed that "[w]hen the physician-patient relationship exists, . . . the patient has a right to expect the physician will care for and treat him with proper professional skills and will exercise reasonable and ordinary care and diligence toward the patient [citation]. This does not suggest, however, a doctor is required to exercise the same degree of skill toward every person he sees. The duty he owes to each varies with the relationship of the parties, the foreseeability of injury or harm that may be expected to flow from his conduct and the reliance which the person may reasonably be expected to place on the opinion received." (*Keene* v. *Wiggins, supra,* 69 Cal.App.3d at p. 313; see *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

It noted that cases from other jurisdictions "uniformly hold that where no physician-patient relationship exists the doctor's only duty is to conduct the examination in a manner not to cause harm to the person being examined." (*Keene* v. *Wiggins, supra,* 69 Cal.App.3d at p. 313.) Any duty to use the proper professional skills in preparing a report based on the examination runs to the person employing the physician to prepare the report, not the person being examined. (*Ibid.*)

Applying California's standards as set forth in *Rowland* v. *Christian, supra,* 69 Cal.2d at page 113, the court concluded it was "apparent where a doctor conducts an examination of an injured employee solely for the

purpose of rating the injury for the employer's insurance carrier in a workers' compensation proceeding, neither offers [n]or intends to treat, care for or otherwise benefit the person examined, and has no reason to believe the person examined will rely on this report, the doctor is not liable to the person being examined for negligence in making that report. His duty to observe a professional standard of care in the preparation of that report runs only to the carrier and to the employer requesting it." (*Keene* v. *Wiggins*, *supra*, 69 Cal.App.3d at pp. 313-314.)

The physician could not reasonably expect that the examinee would rely on the report, inasmuch it is prepared for a person or persons with interests adverse to the examinee's own. (*Keene* v. *Wiggins*, *supra*, 69 Cal.App.3d at p. 314.) This is especially true where there is a dispute over benefits being offered to the examinee, and the purpose of the examination is to determine the level of benefits. (*Ibid.*) Given "the adverse relationship" between the physician as agent of the employer and/or carrier and the examinee, the court could not find the physician's conduct morally blameworthy. (*Ibid.*)

Based on its analysis, the court held defendant owed plaintiff "no duty of professional skill in connection with the report." (*Keene* v. *Wiggins*, *supra*, 69 Cal.App.3d at p. 316.) Therefore, summary judgment properly was granted. (*Ibid.*)

A similar result was reached in *Felton* v. *Schaeffer*, *supra*, 229 Cal.App.3d 229, where defendants conducted a preemployment examination of plaintiff at the request of the employer. (At p. 234.) The court held plaintiff had no medical malpractice claim against defendants; because there was no physician-patient relationship between plaintiff and defendants, any duty to use due care in evaluating plaintiff's condition was owed to the employer, not plaintiff. (*Id.* at pp. 234-235.)

In reaching this result, the court relied on *Keene*. (*Felton* v. *Schaeffer*, *supra*, 229 Cal.App.3d at p. 235.) It also pointed out: "We independently have reviewed out-of-state authorities and find overwhelming agreement that a physician has no liability to an examinee for negligence or professional malpractice absent a physician/patient relationship, except for injuries incurred during the examination itself." (*Ibid.*, fn. omitted.)

Inasmuch as neither *Keene* nor *Felton* involved injuries incurred during the examination, as does the instant case, their statements that a physician may be held liable for medical malpractice for such injuries to an examinee even in the absence of a physician-patient relationship are dicta, without force as precedent. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783,

pp. 753-755.) ▇ As noted by Witkin, however, "[t]o say that dicta are not controlling . . . does not mean that they are to be ignored; on the contrary, dicta are often followed. A statement which does not possess the force of a square holding may nevertheless be considered highly persuasive, particularly when made by an able court after careful consideration, or in the course of an elaborate review of the authorities, or when it has been long followed." (*Id.*, § 785, p. 756; accord, *Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [262 Cal.Rptr. 754], review den. Dec. 13, 1989; *Bunch* v. *Coachella Valley Water Dist.* (1989) 214 Cal.App.3d 203, 212 [262 Cal.Rptr. 513], review den. Dec. 13, 1989.) ▇ Plaintiff here requests we follow the dicta in *Keene* and *Felton*, while defendant claims the authorities suggest the dicta should not be followed.

The parties have cited a number of out-of-state cases dealing with the issue. In *Chiasera* v. *Employers Mut. Liability Ins.* (1979) 101 Misc.2d 877 [422 N.Y.S.2d 341], cited by defendant, plaintiff was examined by a physician at the direction of his employer's workers' compensation carrier. He alleged he was injured by the physician during the course of the examination. The defendants—the physician and the carrier—raised as an affirmative defense the two-and-one-half-year statute of limitations for a medical malpractice action. Plaintiff sought to dismiss the affirmative defense on the ground he had stated a cause of action for ordinary negligence, which was subject to a three-year limitations period. (At p. 342.)

In analyzing the situation, the court began with the proposition that in the absence of a physician-patient relationship, there is no duty and thus there can be no claim for medical malpractice. (*Chiasera* v. *Employers Mut. Liability Ins., supra*, 422 N.Y.S.2d at p. 342.) In the case before it, the type of examination provided to plaintiff could not give rise to a full physician-patient relationship, "with all of the professional duties encompassed therein. However," the court concluded, ". . . the physician is not free of all responsibility but still owes a duty of ordinary care not to injure the employee during the course of his examination." (*Ibid.*) Thus, plaintiff had stated a cause of action for ordinary negligence, which was not time-barred, and was entitled to have the affirmative defense stricken. (*Id.* at pp. 342-343.) In reaching this conclusion, the court cited *Keene.* (*Ibid.*)

The court also cited *Rogers* v. *Horvath* (1975) 65 Mich.App. 644 [237 N.W.2d 595], another case relied upon by defendant here. *Rogers*, however, involved a plaintiff whose action was based on malpractice in the examination by the employer's physician based on the report prepared, not on injuries received during the course of the examination. (237 N.W.2d at p. 596.) Under these circumstances the court concluded, consistent with *Keene*

and *Felton*, plaintiff had no cause of action for medical malpractice because there was no physician-patient relationship. (*Id.* at p. 597.)

The court added, "This is not to say that a physician who examines a person for reasons other than diagnosis or treatment and for the benefit of some one other than the examinee owes no duty of . . . care to that person. Rather, we hold that the physician in such a case does not owe such a duty of care as will subject him to liability for malpractice." (*Rogers* v. *Horvath, supra,* 237 N.W.2d at p. 597.)

Both *Chiasera* and *Rogers* hold a physician may be held liable for injuries caused to an examinee in the absence of a physician-patient relationship, but the liability must be based on ordinary negligence, not medical malpractice. In California, however, there is no distinction between malpractice and negligence.

The Supreme Court very recently addressed the issue in *Flowers* v. *Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992 [35 Cal.Rptr.2d 685, 884 P.2d 142]. It noted that while there may be a distinction between "ordinary" and "professional" negligence for the purposes of the application of certain statutes, the distinction "is misplaced in resolving a motion for summary judgment in which the question is whether the moving party has demonstrated or negated negligence as a matter of law. In the latter context, the nature of the alleged breach of duty affects only the determination of the appropriate standard of care, which otherwise remains constant irrespective of the terminology used to characterize it." (At p. 997.)

Negligence, the court pointed out, is conduct falling below the standard of care. (*Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 997.) The standard of care varies in different situations, but "the standard of conduct itself remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances." (*Ibid.*) Professional education and training thus do not increase the standard of care; they are simply additional circumstances which must be considered in assessing the standard of care in a given situation. (*Id.* at pp. 997-998.) Thus, it has been said "the law ' "demands only that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he [or she] exercise *ordinary care* in applying such learning and skill to the treatment of [the] patient." [Citation.]' " (*Id.* at p. 998, italics in the original.) A cause of action for "professional negligence" states a claim indistinguishable from any other form of negligence. (*Ibid.*)

Touching on a matter mentioned earlier, the court indicated that "[a]ny distinction between 'ordinary' and 'professional' negligence has relevance

primarily when the Legislature has statutorily modified, restricted, or otherwise conditioned some aspect of an action for malpractice not directly related to the elements of negligence itself." (*Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 998.) Such distinctions include such things as an extended statute of limitations and limited noneconomic damages in a medical malpractice action. However, the "fundamental substance" of the action remains the same as that for any negligence action—duty, standard of care, breach and causation. (*Id.* at pp. 998-999.)

The court thereafter reiterated the "general rule applicable in negligence cases arising out of the rendering of professional services," which it had stated on "numerous occasions": " ' "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman." [Citations.]' " (*Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 1001, quoting from *Landeros* v. *Flood* (1976) 17 Cal.3d 399, 410 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324].)

■ Thus, in California, if a physician is to be held liable to an examinee for injuries resulting in the course of an examination and arising out of the rendering of professional services when there is no physician-patient relationship, the physician will be liable for medical malpractice. There is no distinguishable cause of action for ordinary negligence which the plaintiff must bring. To the extent *Chiasera* and *Rogers* so hold, they are not to be followed in California. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) To the extent they hold a cause of action exists against the physician, there is no impediment to following them.

Other New York cases since *Chiasera* have reaffirmed the conclusion that a physician hired by a third person to examine plaintiff owes plaintiff a duty to properly perform the examination so as not to injure plaintiff during the course of the examination. (*Twitchell* v. *MacKay* (1980) 78 A.D.2d 125 [434 N.Y.S.2d 516, 519]; *Ferguson* v. *Wolkin* (1986) 131 Misc.2d 304 [499 N.Y.S.2d 356, 357-358].) And in *Smith* v. *Pasquarella* (1994) 201 A.D.2d 765 [607 N.Y.S.2d 489], a New York court held a breach of this duty may, indeed, constitute malpractice.

In *Smith,* plaintiff alleged she was injured during an examination by defendant physician, who had been engaged to examine her by her insurance carrier. (*Smith* v. *Pasquarella, supra,* 607 N.Y.S.2d at p. 490.) The court

noted that "[a]lthough defendant's examination was not paid for by plaintiff and was not conducted during the course of treatment or with the intention of future treatment, defendant nevertheless owed a duty of reasonable care to plaintiff [citations], although the scope of that duty is limited [citations]." (*Ibid.*) In determining what a breach of that duty would constitute, the court observed that medical malpractice is a form of negligence, and conduct has been held to be malpractice rather than negligence " 'when it "constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" ' [citations]." (*Ibid.*) However, strict application of this definition would allow defendant to avoid liability for malpractice, since he did not treat or intend to treat plaintiff. (*Ibid.*) Rather than allow this to happen, the court concluded "that because defendant utilized the same professional skills in examining plaintiff at the insurance carrier's request as he would have in examining plaintiff for treatment purposes, there is a sufficient nexus to medical treatment" to allow a determination as to whether plaintiff had stated a cause of action for medical malpractice or negligence. (*Id.* at pp. 490-491.)

▌ Under New York law, as in California, negligence becomes malpractice when " 'the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons,' " rather than conduct which can " 'be assessed on the basis of the common everyday experience of the trier of the facts.' " (*Smith* v. *Pasquarella, supra,* 607 N.Y.S.2d at p. 491; see *Flowers* v. *Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 1001.) ▌ Plaintiff had alleged inter alia that defendant positioned and manipulated her during the examination in "a manner that was likely to aggravate her injury." (*Smith, supra,* at p. 491.) Since evaluation of this conduct was a " 'matter of medical science or art requiring special skills not ordinarily possessed by lay persons,' " plaintiff stated a cause of action for medical malpractice. (*Ibid.*)

In a Texas case, *Johnston* v. *Sibley* (Tex.Civ.App. 1977) 558 S.W.2d 135, the court followed *Keene* and *Rogers* to hold that in the absence of a physician-patient relationship, no cause of action exists for medical malpractice based on the physician's examination of the plaintiff and report on the results of the examination. (At pp. 136-137.) However, the court added, again citing *Keene,* that the physician does owe a duty to the examinee to conduct the examination in a manner which does not harm the examinee. (*Id.* at p. 137.) *Johnston* was cited as an example of cases from other jurisdictions adopting this principle in *Felton* v. *Schaeffer, supra,* 229 Cal.App.3d at page 236.

A similar conclusion also was reached in Colorado in *Greenberg* v. *Perkins* (Colo. 1993) 845 P.2d 530. The court there noted ". . . all courts

that have considered the issue agree, under one form of analysis or another, that a physician owes a duty of care to a nonpatient examinee to 'conduct the examination in a manner not to cause harm to the person being examined.' " (At p. 535, citing *Keene* and *Felton, Rogers, Ferguson, Chiasera* and *Johnston*.)

To determine whether California should, as other jurisdictions have, adopt the principles set forth in *Keene* and *Felton* as dicta, that in the absence of a physician-patient relationship a physician still owes an examinee the duty to conduct the examination in a manner which does not injure the examinee, the considerations set forth in *Rowland* v. *Christian, supra*, 69 Cal.2d at page 113 provide guidance. (*Keene* v. *Wiggins, supra*, 69 Cal.App.3d at p. 312.) These are: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra*, at p. 113.)

It is reasonably foreseeable that a negligently conducted physical examination, particularly one involving mechanical or invasive testing, may result in physical injury to the examinee. The certainty the examinee suffered injury and the closeness of the connection between the physician's conduct and the injury would be no different whether the examination was conducted at the request of the examinee—in which case it already is established the physician may be held liable for malpractice—or at the request of a third person, such as an employer or insurance carrier. The moral blame attached to the physician's conduct should be the same no matter who requested the examination: a physician is a professional who is required to have a certain level of skill and training and whose conduct is measured by a standard of care commensurate with that skill and training; a physician should not be absolved of liability for failure to exercise that standard of care merely because the person being examined is not paying for the examination.

Imposing liability for negligence in the examination even in the absence of a physician-patient relationship would serve the policy of preventing future harm by precluding a situation in which a physician negligently could injure an examinee with impunity. No greater burden would be imposed on the physician and the community than already exists with respect to examinees who have paid for their own examinations and have relationships with

their physicians. And, of course, insurance is available to physicians for the risk involved.

All the *Rowland* considerations support the imposition of liability in the situation at issue. The old maxim, "[f]or every wrong there is a remedy" (Civ. Code, § 3523), also supports the imposition of liability. Accordingly, we hold that even in the absence of a physician-patient relationship, a physician has liability to an examinee for negligence or professional malpractice for injuries incurred during the examination itself. (*Felton* v. *Schaeffer, supra,* 229 Cal.App.3d at p. 235; *Keene* v. *Wiggins, supra,* 69 Cal.App.3d at p. 313.)

In the instant case, the trial court granted summary judgment, in part on the ground there was no physician-patient relationship between defendant and plaintiff, so defendant could not be held liable for injuries incurred by plaintiff during his examination of her. This was error. However, inasmuch as the trial court's grant of summary judgment, even if made on an incorrect ground, must be affirmed if it would have been proper on another basis (see *Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1087 [258 Cal.Rptr. 721]), the question to be answered is whether summary judgment nonetheless properly was granted.

Summary judgment properly is granted if there is no triable issue of fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Mars* v. *Wedbush Morgan Securities, Inc.* (1991) 231 Cal.App.3d 1608, 1613 [283 Cal.Rptr. 238].) To secure a summary judgment, a moving defendant must disprove at least one essential element of the plaintiff's case or prove an affirmative defense. (Code Civ. Proc., § 437c, subd. (n); *Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674]; *Steingart* v. *White* (1988) 198 Cal.App.3d 406, 409 [243 Cal.Rptr. 678].) The defendant "must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial." (*Chevron U.S.A., Inc., supra,* at p. 548.)

Defendant's summary judgment motion was based on a lack of duty owed to plaintiff. Since defendant did owe a duty to plaintiff, as concluded above, he has failed to disprove the essential element of duty (*Keene* v. *Wiggins, supra,* 69 Cal.App.3d at p. 312), which would have established his right to a summary judgment (Code Civ. Proc., § 437c, subd. (n)).

■ Defendant also had raised, as an affirmative defense, the statute of limitations. Plaintiff alleged injury on October 18, 1990. She served notice

to defendant of her intention to commence an action against him (Code Civ. Proc., § 364) on October 8, 1991. She filed her complaint on January 16, 1992.

The limitations period for a negligence action is one year. (Code Civ. Proc., § 340, subd. (3).) However, where the action is one for medical malpractice and the notice of intention to commence an action is served within 90 days of the expiration of the limitations period, the limitations period is extended for 90 days. (*Id.*, § 364, subd. (d); *Barber* v. *Superior Court* (1991) 234 Cal.App.3d 1076, 1080 [285 Cal.Rptr. 668].) Thus, if plaintiff's action is not one for medical malpractice, it is barred by the statute of limitations and summary judgment was proper. (See *Kurokawa* v. *Blum* (1988) 199 Cal.App.3d 976, 989 [245 Cal.Rptr. 463]; *Scherer* v. *Mark* (1976) 64 Cal.App.3d 834, 843 [135 Cal.Rptr. 90].)

As previously discussed, a negligence action involving services rendered by a physician will be considered one for medical malpractice if it involves or substantially relates to the rendition of medical treatment by a licensed physician. (*Smith* v. *Pasquarella, supra*, 608 N.Y.S.2d at p. 490.) Clearly, performing testing of orthopedic injuries using various testing apparatuses involves or relates to the rendition of medical treatment, and defendant is a licensed physician. Accordingly, plaintiff's action is one for medical malpractice and thus not barred by the statute of limitations. Therefore, defendant failed to prove the affirmative defense of the expiration of the limitations period entitling him to summary judgment. (Code Civ. Proc., § 437c, subd. (n); see *Kurokawa* v. *Blum, supra*, 199 Cal.App.3d at p. 989; *Scherer* v. *Mark, supra*, 64 Cal.App.3d at p. 843.)

II

■ Plaintiff further contends summary judgment erroneously was granted, in that a negligent act which causes physical injury is not a broadcast or publication entitling the actor to immunity. Again, we agree.

The second ground on which summary judgment was granted was that defendant's actions were privileged under Civil Code section 47, subdivision (b), item (2) (section 47(b)(2)). That section provides: "A privileged publication or broadcast is one made . . . [¶] [i]n any . . . judicial proceeding . . . ."

As defendant claims, section 47(b)(2) applies not only to publications made in judicial proceedings themselves, but also to actions preparatory to judicial proceedings. (*Gootee* v. *Lightner* (1990) 224 Cal.App.3d 587, 594

[274 Cal.Rptr. 697].) However, it does not apply to *all* preparatory actions. As stated in *Gootee*, ". . . the protective mantle of the privilege embraces not only the courtroom testimony of witnesses, but also protects prior preparatory activity leading to the witnesses' testimony" *where the injury results from the testimonial process. (Ibid.,* fn. omitted.)

The issue recently was addressed by the Supreme Court in *Kimmel* v. *Goland* (1990) 51 Cal.3d 202 [271 Cal.Rptr. 191, 793 P.2d 524], which involved "the unlawful recording, in anticipation of litigation, of confidential telephone conversations." (At p. 205.) The court pointed out the threshold issue in determining whether section 47(b)(2) applies is whether the injury results from communicative acts or noncommunicative conduct. (51 Cal.3d at p. 211.) Section 47(b)(2) applies only to torts arising from communicative acts, i.e., statements or publications. *(Ibid.)* Since defendants were seeking damages for the violation of their privacy rights by the unlawful recording of their confidential telephone conversations itself, rather than for injuries from any publication of the confidential conversations, section 47(b)(2) did not apply to bar their action. (51 Cal.3d at p. 212.)

Here, plaintiff is seeking damages for injuries resulting from defendant's noncommunicative conduct. She is not seeking damages for injuries resulting from any communicative acts, such as preparation of a false report to be used as a basis for testimony in a judicial proceeding. Her injuries did not result from the publication of an injurious falsehood. Hence, the acts by defendant of which she complains were not privileged under section 47(b)(2) (*Kimmel* v. *Goland, supra,* 51 Cal.3d at pp. 211-212; *Gootee* v. *Lightner, supra,* 224 Cal.App.3d at p. 594) and summary judgment erroneously was granted on that ground (Code Civ. Proc., § 437c, subd. (n)).

The judgment is reversed. Plaintiff is to recover costs on appeal.

Ortega, J., and Masterson, J., concurred.