Filed 11/22/13  Roman v. Smithwick CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GABRIEL L. ROMAN, | B240736 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC 105503) |
| v. | |
| JANICE SMITHWICK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Linda Lefkowitz and Lisa Hart Cole, Judges.  Affirmed.

Gabriel L. Roman, in pro. per.; and Luminita Roman for Plaintiff and Appellant.

Mark R. Weiner & Associates and Kathryn Albarian for Defendant and Respondent.

\* \* \* \* \* \*

Appellant Gabriel L. Roman brought this personal injury lawsuit against Janice Smithwick for injuries sustained as a result of a car accident on January 12, 2009. At trial, Smithwick stipulated she was negligent in causing the accident and disputed only the nature and extent of Roman's injuries. The jury returned a verdict for Roman in the amount of $14,352 -- $4,352 for medical expenses, and $10,000 for noneconomic losses.

On appeal, Roman argues (1) the jury's verdict was not supported by substantial evidence; (2) the trial court erred in denying his new trial motion; (3) the court erred in granting Smithwick's motion in limine to preclude Roman from claiming medical malpractice against Smithwick's expert witness; (4) Roman should have been permitted to submit evidence relating to liability insurance; (5) Smithwick's attorney committed misconduct in closing argument; (6) the trial judge's so-called "mental impairment" requires a retrial; and (7) the court erred when it taxed Roman's expert witness costs. We affirm.

## STATEMENT OF FACTS

Roman has not provided this court with a complete record of the trial. The jury heard testimony from five witnesses on two days. The reporter's transcript does not include a transcript of the first day of trial testimony, when Roman, his ex-wife, and the defense's expert, Dr. Keith Lieberman, testified. Part of Dr. Lieberman's testimony is included in the clerk's transcript as an attachment to Roman's new trial motion, but this transcript includes only Dr. Lieberman's direct and redirect testimony and not his testimony on cross- or recross-examination. On the second day of trial, Roman's medical expert, Dr. Ayman Salem, and a defense witness, Dr. Michael Milman, testified. The reporter's transcript includes only Dr. Salem's direct and redirect testimony, but not his testimony on cross- or recross-examination. It does not include any of Dr. Milman's testimony. In sum, of the five witnesses at trial, we have no record of the testimony of three and partial records of the testimony of two. We summarize what facts are available to us in the following.

Roman's medical expert, Dr. Salem, is a neurosurgeon. He first saw Roman in July 2010, 18 months after the accident. Dr. Salem took a history from Roman and

examined computerized tomography (CT) scans Roman had taken in late May 2010. Roman was in severe pain and Dr. Salem suspected a disk herniation. Dr. Salem had a magnetic resonance imaging (MRI) performed and confirmed Roman had a severe right lateral disk herniation in his spine. The doctor opined the accident in January 2009 caused Roman's herniation. Based on the history Roman gave him, Dr. Salem was not aware of any other trauma that could have caused the herniation. From the description Roman gave Dr. Salem of the accident, he was sitting in his car and turned to look at his wife when his car was hit on the right side, and he was thrown to the left and back. Dr. Salem explained that would have given him symptoms of low back pain and right leg pain, which would grow progressively worse and eventually get "out of hand." Dr. Salem admitted he had reason to believe Roman could have given a false history because Roman was in severe pain and distress and on medications when the doctor saw him.

Dr. Salem performed a fragmentectomy surgery on Roman that dramatically improved his symptoms, but he still suffered from some pain and would suffer from pain for the rest of his life. Roman would need further surgery, a fusion, in the future. The doctor opined Roman incurred $244,052.28 in medical expenses that were reasonably and medically necessary since the accident in 2009. The doctor estimated Roman would incur another $270,000 to $280,000 in medical expenses for the surgery and postoperative physical therapy he would need in the future.

Smithwick's medical expert, Dr. Lieberman, is an orthopedic surgeon. He treats patients and also does forensic work for lawsuits. Defense counsel retained him to examine Roman. Besides the exam, he also reviewed Roman's medical records and MRI results. According to the medical records, Roman began seeing a chiropractor, Dr. Milman, the day after the accident. Dr. Lieberman opined Roman sustained soft tissue sprain and strain injuries to the neck, mid-back, and lower back as a result of the car accident. Dr. Milman diagnosed Roman with these conditions as well as headaches, sprain and strain of the left shoulder, and acute posttraumatic stress disorder. The records indicated Roman treated with Dr. Milman until March 2009, at which time all symptoms

3

had resolved except some mild residual pain in the neck when Roman turned his head as far as he could to the left, right, up, or down. There were no references in Dr. Milman's records to leg pain. Dr. Milman performed tests to determine whether a disk was involved in Roman's injuries, and the tests were negative. For the entire two months Dr. Milman treated Roman, there were no suggestions in the medical records of disk involvement.

According to the medical records, Roman was also treated at the "BAART" clinic. He was seen at the BAART clinic in February, April, June, September, and November 2009. The BAART records indicate his back and extremities were normal and did not indicate any pain in those areas. There were no complaints in the records of back pain until January 2010, except that his records before the accident show a complaint of back pain in March 2008.

Dr. Lieberman saw Roman in April 2010. He opined Roman's herniated disk was not at all related to the accident because Roman had no complaints of leg pain following the accident, and his initial back pain had cleared up by March 2009. Additionally, the CT scan of May 2010 did not show a herniated disk, according to Dr. Lieberman. The herniated disk did not appear in the records until the MRI in July 2010. Dr. Lieberman opined a herniated disk could occur whenever stress is put on the lower back, such as when doing sit-ups, getting out of bed, doing heavy lifting, or falling down.

The jury's $14,352 award included $4,352 in medical expenses for Dr. Milman's chiropractic care but no other medical expenses.

**DISCUSSION**

*1. Sufficiency of the Evidence Challenge*

A jury's verdict stands if it is supported by substantial evidence. (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 389.) In determining whether a judgment is supported by substantial evidence, we do not confine our consideration to isolated pieces of evidence, but view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the jury. (*Ibid.*) "'A formulation of the substantial

4

evidence rule which stresses the importance of isolated evidence supporting the judgment, . . . risks misleading the court into abdicating its duty to appraise the whole record.'" (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 652.)

Roman has forfeited the argument that there was not substantial evidence supporting the jury's verdict by providing us an incomplete record of the trial. We have only partial records of the expert witnesses' testimony and no record of the testimony of the first doctor to treat Roman, Dr. Milman. We also do not have a record of his or his ex-wife's testimony. We cannot possibly say substantial evidence did not support the verdict without reviewing the whole record. Instead, we presume the record contains evidence supporting the verdict, and it was Roman's burden to provide a record and argument showing otherwise. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1255.) Because he has failed to do so, we must uphold the verdict.

## 2. *Motion for New Trial*

Roman filed a motion for new trial, or in the alternative, a motion for judgment notwithstanding the verdict. He contended Dr. Lieberman's testimony could not support the verdict because the doctor testified only as to his "personal belief" and did not express his opinion to a reasonable degree of medical certainty or probability. Instead, Roman asserted Dr. Lieberman's testimony was conjectural and speculative. He argued the verdict was not supported by sufficient evidence and was against the law. (Code Civ. Proc., § 657, subd. (6).) The trial court denied the motion.

We review a trial court's ruling on a motion for new trial for abuse of discretion. (*Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 645.) But "particularly when reviewing an order denying a new trial, the appellate court is required to review the entire record to determine independently whether the error on which the new trial motion is based is prejudicial." (*Ibid.*)

"'The trial court's power to grant a motion for JNOV [judgment notwithstanding the verdict] is the same as its power to grant a directed verdict. (Code Civ. Proc., § 629.) The court must accept as true the evidence supporting the jury's verdict, disregarding all

5

conflicting evidence and indulging in every legitimate inference that may be drawn in support of the judgment. The court may grant the motion only if there is no substantial evidence to support the verdict.' [Citation.] On appeal, we apply the same standard and must uphold the trial court's denial of the motion unless there is no substantial evidence to support the verdict." (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 289.)

Roman argues the trial court erred in denying his new trial motion. Whether we view the motion as a motion for new trial or a motion for judgment notwithstanding the verdict, Roman has forfeited this contention. His failure to provide a complete record of the evidence at trial precludes our review. Without a complete record, we cannot conclude the court erred in determining there was sufficient evidence to support the verdict. We therefore reject appellant's argument that the trial court erred in denying his motion. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.)

## 3. *Evidence of Malpractice Claim Against Dr. Lieberman*

Smithwick filed a motion in limine to preclude Roman from claiming any medical malpractice against Dr. Lieberman and another motion in limine to preclude Roman from referencing any intention to bring suit against Dr. Lieberman. Smithwick's counsel retained Dr. Lieberman to perform an independent medical examination of Roman pursuant to Code of Civil Procedure section 2032.220. (Code Civ. Proc., § 2032.220, subd. (a) [as part of discovery for personal injury suit, any defendant may demand one physical examination of the plaintiff if certain conditions are satisfied].) Dr. Lieberman conducted his examination of Roman in April 2010. In December 2010, Roman served defense counsel with a subpoena requesting Dr. Lieberman produce, among other things, his "medical malpractice insurance policy number" because Roman intended to file a claim with Dr. Lieberman's malpractice insurer for "failure to properly diagnose" Roman. In June 2011, Roman sent Dr. Lieberman a letter notifying the doctor Roman intended to sue for medical malpractice based on his failure to properly diagnose, misrepresenting credentials, and refusing to provide treatment because of no insurance. Smithwick argued Roman had no valid malpractice claim against Dr. Lieberman and any allegations of medical malpractice were a nonissue, irrelevant, and prejudicial. Roman

argued Dr. Lieberman was his treating physician even though Smithwick's insurer sent him to see the doctor, and his allegations of medical malpractice were relevant to show the doctor's bias and motive to testify against him. The trial court granted both motions in limine, finding such evidence would necessitate undue consumption of time and was more prejudicial than probative. (Evid. Code, § 352.)

We review the court's ruling on a motion in limine for abuse of discretion. (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1493.) Roman fails to show the court erred here. An examination of a personal injury plaintiff arranged for by the defense is a discovery tool under Code of Civil Procedure section 2032.220, and the plaintiff submits to it "in a strictly adversarial context." (*Urbaniak v. Newton* (1991) 226 Cal.App.3d 1128, 1135.) In such a discovery proceeding, the examining physician does not owe the plaintiff a duty of care because there is no physician-patient relationship. (*Ibid.*; *Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1471.) Thus, the examining physician generally is not liable to the plaintiff for medical malpractice for things like failure to properly diagnose or treat. The physician may be liable when he or she injures the plaintiff during the course of the examination, as the physician still has a duty to conduct the examination with care. (*Mero v. Sadoff, supra*, at p. 1475.)

If Roman were permitted to claim Dr. Lieberman committed malpractice against him, Dr. Lieberman would be compelled to defend himself against these allegations, which, according to the law discussed above, may be baseless. The jury would be embroiled in a mini-trial on Roman's malpractice claim against Dr. Lieberman, a tangential if not entirely irrelevant issue. To state the obvious, Smithwick is the defendant here, not Dr. Lieberman. Roman had his own medical expert to show whether Dr. Lieberman's conclusions were wrong and to demonstrate the car accident caused his severe injuries. There was no need to get into malpractice allegations to discredit Dr. Lieberman's opinion. To the extent the malpractice allegations were relevant at all to show bias and motive, their probative value was far outweighed by the undue consumption of time and confusion of issues the malpractice evidence would cause. (Evid. Code, § 352.) The court did not err in granting the motions in limine. And even if

7

it did, we could not reliably determine whether excluding the evidence was prejudicial to Roman's case because of the incomplete record Roman has provided.[1]

## 4. Evidence of Insurance

Roman concedes, as he must, that evidence of insurance was inadmissible to prove Smithwick's negligence or other wrongdoing. (Evid. Code, § 1155.) He nevertheless contends the court should have permitted evidence of insurance to show Smithwick's insurer was compensating Dr. Lieberman, which was purportedly relevant to the doctor's bias as a witness. We reject this argument. First, Roman has not cited to any place in the record when he tried to introduce evidence of Smithwick's insurance or stated he wanted to do so, but the court precluded it. The court could not have erred when Roman never raised the issue and the court never ruled on it. Roman's challenge is hypothetical at this point; we simply have nothing to review. (See *People v. Rowland* (1992) 4 Cal.4th 238, 259 ["No ruling was made below. Accordingly, no review can be conducted here. '[T]he absence of an adverse ruling precludes any appellate challenge.'"].) Second, to the extent Roman claims error because he could not show "who was paying [Dr. Lieberman] to show up as a witness at trial," the argument is not well taken. Early in Dr. Lieberman's examination, defense counsel elicited the following: approximately 30 percent of the doctor's practice was forensic work; he made approximately $50,000 per year for forensic work for the last five years; he had done forensic work for defense counsel's firm previously; and he was being paid $4,750 for testifying in court that day. The jury heard this evidence and Roman was free to use it in argument.

## 5. Attorney Misconduct

Roman contends defense counsel's comments in closing argument amounted to misconduct and require a new trial. Specifically, he points to counsel's comments that

---

[1] The same is true with respect to the claimed errors we discuss in parts 4, 5, and 6, *post*, though we will not reiterate the point in those parts.

8

(1) Roman went to the chiropractor to "build up" his medical records for a lawsuit, and (2) Roman and his ex-wife lacked credibility. We also reject this argument.

"'Generally, to preserve for appeal an instance of misconduct of counsel in the presence of the jury, an objection must have been lodged at trial.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794.) In addition to objecting, the party must also move for a mistrial or seek a curative admonition. (*Ibid.*) The primary purpose of this requirement is to avoid repetition of the offending remarks and thereby obviate the need for a new trial. (*Ibid.*) Here, Roman never objected to the remarks of defense counsel. He has therefore forfeited this claim of error. (*Horn v. Atchison, T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 610-611.)

### 6. Trial Judge's "Mental Impairment"

Roman contends the trial judge's "mental impairment" casts doubt on her rulings in the case and requires reversal. This argument is especially unpersuasive. It consists of nothing more than unfounded attacks on the judge's mental faculties. He relies solely on (1) two news articles outside the record; (2) an isolated remark by the judge that she must have missed or did not hear a comment by counsel; and (3) a sentence in the ruling on the new trial motion that stated Roman's MRI was in August 2010, instead of July 2010. None of this evidences so-called mental impairment. What is more, Roman provides not a single citation to authority to support this argument. We decline to reverse on this basis. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522 ["'[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.'"].)

### 7. Motion to Tax Costs

Roman's final contention is that the court erred when it granted in part Smithwick's motion to tax costs. In pertinent part, the court held Roman could not recover $10,000 incurred for Dr. Salem's expert witness fees. These fees were for meeting with counsel the day before trial and for testifying at trial. The trial court was called upon to interpret the costs statute and determine whether expert fees were

9

allowable costs. A de novo standard of review is appropriate. (*Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 596.)

Among the "allowable costs" a prevailing party may recover are "[f]ees of expert witnesses *ordered by the court*." (Code Civ. Proc., § 1033.5, subd. (a)(8), italics added.) The pertinent statute expressly provides "[f]ees of experts not ordered by the court" are not "allowable costs," except when expressly authorized by statute. (*Id.*, subd. (b)(1); see *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1149 ["Section 1033.5, subdivision (b)(1) provides that, unless expressly authorized by law, the fees of experts not appointed by the court are not allowable as costs."].)

Roman designated Dr. Salem as his medical expert. The court did not appoint him as an expert. As such, his fees were not allowable costs, and the trial court did not err in taxing these costs. Roman does not cite any other law that would allow recovery of expert witness fees in this case. Instead, Roman argues the costs statute gave the court discretion to award "reasonably necessary" costs, and Dr. Salem's testimony was reasonably necessary to his case. Roman misinterprets the statute. The court has discretion to award reasonably necessary *allowable costs*. (Code Civ. Proc., § 1033.5, subd. (c)(2).) The court has no discretion at all to award nonallowable costs under the statute. The statute expressly and clearly defines expert witness fees as nonallowable costs under the circumstances here.

## DISPOSITION

The judgment is affirmed. Smithwick to recover costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.                          RUBIN, J.


10