Filed 6/23/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARYAM FAZEL, | |
| Plaintiff and Appellant, | G065455 |
| v. | (Super. Ct. No. 30-2022-01244957) |
| PETE FOWLER CONSTRUCTION SERVICES, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge. Affirmed.

The Tarassoly Law Group and Vida Tarassoly for Plaintiff and Appellant.

Miller Johnson Law and Jon B. Miller for Defendant and Respondent.

\* \* \*

In a prior lawsuit, plaintiff Maryam Fazel sued her neighbor due to water intrusion emanating from her neighbor's property. The neighbor retained Pete Fowler Construction Services (Fowler Construction or Fowler) as an expert. Fowler Construction prepared an expert report in which it recommended repairs that later formed the basis of a settlement of the lawsuit. After the repairs were implemented and the underlying suit settled, however, the water intrusion returned.

In the present lawsuit, Fazel sued Fowler Construction for negligence in the formulation of the repairs. The court entered judgment on the pleadings in favor of Fowler, ruling that Fowler's recommendations were generated for an expert report in the course of litigation, and thus the absolute litigation privilege barred Fazel's suit. We agree and affirm the judgment.

FACTS

In June 2020, Fazel sued her neighbor, Alan Sakai, for damages caused by water intrusion emanating from Sakai's property. Sakai retained the services of Fowler Construction, which, in August 2020, inspected both Fazel's and Sakai's properties and formulated recommended repairs to prevent future water intrusion into Fazel's property. Fowler Construction drafted an expert report containing those recommendations, which Sakai shared with Fazel. Fazel apparently agreed to those recommendations, following which Sakai retained co-defendant Avex Builders to implement the repairs. After the work had been completed by Avex, Fazel agreed to settle the lawsuit against Sakai for $8,250 in damages paid by Sakai's insurance carrier. The settlement required Sakai to provide documentation showing that "necessary repairs" had been completed. Sakai provided Fowler Construction's expert report and invoices from Avex Builders to satisfy that

2

requirement. Based on the settlement, the previous suit was ultimately dismissed.

Over the two months following the settlement, heavy rains fell, and Fazel's property once again flooded. In February 2022, Fazel filed the underlying suit against Fowler, Avex, and Sakai. Her first amended complaint asserted causes of action against Fowler Construction for intentional and negligent misrepresentation (counts 1, 2), negligence (count 3), violation of Business and Professions Code section 7160 (count 4), breach of contract toward a third party beneficiary (count 5), and fraudulent concealment (count 6).

In response, Fowler Construction filed an anti-SLAPP motion. Fowler argued that it had been sued based on statements made in an expert report during the course of litigation, which is constitutionally protected conduct. The trial court agreed and granted the motion as to counts 1, 2, 4, and 6, all of which were based on statements Fowler made in the course of litigation. However, it denied the motion as to counts 3 and 5, finding those counts arose from conduct (rather than statements), which was not constitutionally protected activity. Fowler appealed, contending the court erred in denying the motion as to counts 3 and 5, but in a prior opinion, we affirmed the order, agreeing with the trial court's reasoning that the third and fifth causes of action did not arise from protected activity. We specifically declined to address whether the litigation privilege, or any other defense, barred the third and fifth causes of action on the merits.

After remand, Fowler Construction filed a motion for judgment on the pleadings as to the remaining counts, contending the litigation privilege barred the claims on the merits. The trial court agreed and granted the motion. Fazel timely appealed.

DISCUSSION

Fazel contends the court erred by granting judgment on the pleadings based on the litigation privilege with regard to the third (negligence) and fifth (breach of contract, third party beneficiary) causes of action. "A motion for judgment on the pleadings performs the same function as a general demurrer, and hence attacks only defects disclosed on the face of the pleadings or by matters that can be judicially noticed. [Citations.] Presentation of extrinsic evidence is therefore not proper on a motion for judgment on the pleadings." (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999.) "A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review." (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.)

The third cause of action accuses Fowler of negligence on the ground that "the repairs they formulated . . . were defective and inadequate." Similarly, in the fifth cause of action, Fazel alleges "[t]he construction work that . . . Fowler Construction . . . formulated . . . is defective and inadequate . . . ." She further alleges that "the only motivating purpose" of the contract between Fowler Construction and Sakai "was to perform the necessary repairs to prevent water intrusion to Plaintiff's property."

The litigation privilege is found in Civil Code section 47, subdivision (b), which provides that a "publication" or "broadcast" made in any judicial proceeding is privileged. "'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.)

4

In *Silberg v. Anderson* (1990) 50 Cal.3d 205 (*Silberg*), our high court explained the policy supporting the rule: "The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Id.* at p. 213.) "[W]itnesses should be free from the fear of protracted and costly lawsuits which otherwise might cause them either to distort their testimony or refuse to testify altogether." (*Id.* at p. 214.) The litigation privilege "further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Ibid.*) "Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Ibid.*) "To effectuate its vital purposes, the litigation privilege is held to be absolute in nature." (*Id.* at p. 215.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)

Although the litigation privilege applies explicitly to communications, it can also extend to noncommunicative acts that are necessarily related to a communication. "[I]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . [Citations.] Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1065.)

Here, although Fowler Construction's alleged negligence in the "formulation" of repairs may itself not have been a communicative act, it was necessarily related to one. The whole point of formulating repairs was to include them in an expert report (a communication) prepared in the course of litigation. Indeed, the formulation could not cause harm until it was *communicated* to Fazel by Sakai giving her Fowler's expert report. Fazel had every opportunity to contest the adequacy of the suggested repairs by hiring her own expert to challenge Fowler's recommendations, negotiating additional repairs, or, if necessary, continuing to litigate the case rather than settle it. In other words, Fazel's opportunity to challenge the recommendations in Fowler's expert report was in the previous lawsuit, not in a derivative lawsuit. This is exactly what the litigation privilege is designed to avoid.

Fazel contends we should find the litigation privilege does not apply as the court did in *Mero v. Sadoff* (1995) 31 Cal.App.4th 1466 (*Mero*). There, an employee hurt her back on the job and filed a claim for workers' compensation benefits against her employer. (*Id.* at p. 1469.) The employer requested that she submit to a medical examination by a physician retained by the employer, which she did. Afterward, she sued the physician, contending he contorted her body in ways that exacerbated her back injury. The trial court granted summary judgment against the employee, finding the litigation privilege barred the claim. (*Id.* at p. 1470.) The *Mero* court reversed on the ground that the negligent physical examination was noncommunicative conduct and plaintiff's injury did not "result[] from the testimonial process." (*Id.* at p. 1480.) It reasoned, "She is not seeking damages for injuries resulting from any communicative acts, such as preparation of a false report to be used as a basis for testimony in a judicial

6

proceeding. Her injuries did not result from the publication of an injurious falsehood. Hence, the acts by defendant of which she complains were not privileged . . . ." (*Ibid.*)

We agree with the analysis in *Mero*, but we find it distinguishable. Unlike the unnecessary physical contortions in *Mero*, Fowler's formulation of the repairs *was* part of the testimonial process: Fowler formulated the repairs for the express purpose of preparing an expert report on the scope of necessary repairs, and, as Fazel acknowledges, that report "was prepared for mediation purposes." Moreover, here, unlike in *Mero*, the injury *did* result from a communicative act: the communication of the formulated repairs in the form of an expert report. The formulation of repairs could not possibly have injured Fowler until they were communicated to her and she accepted them as a basis of the settlement.

Fazel's final argument takes a bit of a strange and tortured logical path. She begins by acknowledging that Fowler's recommendations were prepared in the course of litigation "for the benefit of Sakai, not Fazel. As such, [the Fowler report] is protected by the litigation privilege, *and any purportedly defective recommendations it contains are immune from liability*." (Italics added.) That would seem to be a self-defeating admission. She goes on: "It is therefore illogical to treat the report as suitable for implementation as design recommendations, because it was not prepared under the strict standard that it be defect-free." "Using the Report's recommendations as the basis for the design and construction repairs to Fazel's residence created a clear conflict of interest. Accordingly, the Report's recommendations should never have been implemented for the actual construction of the repairs, and their use was harmful rather than useful." She then concludes: "[Fowler] cannot be immune from liability for the allegedly faulty recommendations [it]

7

provided for the construction of the repairs to Fazel's property, which have resulted in damages."

The suggestion here seems to be that Fowler had a duty to prevent Fazel from relying on the recommendations that Fowler produced in its expert report. However, Fazel has cited no authority for such an extraordinary proposition, and we flatly reject the notion that a retained expert has a duty to ensure that *the opposing party* does not rely on its expert report. Such a proposition is wholly inconsistent with the policies animating the litigation privilege.

Nevertheless, we think Fazel's misguided argument, in some sense, hits the nail on the head. This case is ultimately about Fazel's decision, during the course of litigation, to rely on the opposing party's expert report despite the obvious risk of bias. That was a decision that Fazel freely made having had ample opportunity to vet Fowler's report with her own expert. She cannot now seek to hold Fowler liable for her own decision making. Because Fowler's formulation of the repairs was an act necessarily related to a communicative act, and it was made in the course of a judicial proceeding, the absolute litigation privilege bars Fazel's claims.

DISPOSITION

The judgment is affirmed. Fowler Construction shall recover its costs incurred on appeal. Fazel's motion to strike her own brief and substitute a new brief is denied.

SANCHEZ, J.

WE CONCUR:

MOTOIKE, P. J.

MOORE, J.

9