[No. B244590. Second Dist., Div. Seven. Mar. 11, 2013.]

SHELDON APPEL, as Trustee, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WEBCOR CONSTRUCTION, INC., Real Party in Interest.

COUNSEL

Murphy Rosen Meylan & Davitt, Vincent J. Davitt, Robert L. Meylan, Anita Jain; Anderson, McPharlin & Conners, Michael S. Robinson and D. Damon Willens for Petitioners.

Miller Starr Regalia, Richard G. Carlston, Amy Matthew and Matthew C. Henderson for California Land Title Association as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Bowles & Verna, Richard T. Bowles, Kenneth G. Jones, Michael P. Connolly and Deborah P. Furth for Real Party in Interest.

OPINION

ZELON, J.—

## INTRODUCTION

Webcor Construction, Inc., executed a contract with Wilshire Landmark to construct a condominium development. After the parties became involved in

a payment dispute, Webcor filed an action for breach of contract against Wilshire and foreclosure of mechanic's lien against numerous individuals who had purchased condominium units from Wilshire. Webcor entered into a settlement agreement with Wilshire and proceeded against the unit owners on the mechanic's lien claim.

Prior to trial, Webcor filed a motion in limine to preclude the unit owners from introducing any evidence related to the value of its construction contract with Wilshire. The unit owners opposed the motion, arguing that, under Civil Code former section 3123, subdivision (a), the value of the construction contract was relevant to determining the proper amount of the mechanic's lien. The trial court, however, ruled that because the unit owners were not parties to the construction contract, the amount of the lien was to be determined based solely on the reasonable value of Webcor's work. The court further concluded that, in light of this ruling, the value of the contract was not relevant to any issue at trial.

The unit owners filed a petition for writ of mandate seeking an order requiring the superior court to permit them to introduce evidence related to the value of the construction contract. We issued an order to show cause and now grant the unit owners' petition, concluding that the trial court's ruling was predicated on an erroneous interpretation of Civil Code former section 3123, subdivision (a).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Summary of Plaintiffs' Lawsuit*

On October 31, 2003, Webcor Construction entered into a contract with Wilshire Landmark to construct a 23-story residential condominium development in Los Angeles, California. Although the contract established that the initial "guaranteed maximum price" (GMP) for the project was $65.5 million, section 5.3 of the agreement stated that the GMP could "be increased or decreased to the extent agreed to in writing . . . for Changes in the Work." During the course of the construction, Wilshire approved numerous change orders and agreed to increase the GMP to approximately $81 million. Webcor, however, asserted that it was entitled to an additional $13.5 million for approved changes and recorded a mechanic's lien claim against the project.

In 2007, Webcor filed a complaint asserting claims for breach of contract against Wilshire and foreclosure of the mechanic's lien against Wilshire and numerous individuals who had purchased condominium units from Wilshire

(the unit owners).[1] Webcor filed a second complaint against Wilshire and several Wilshire "member entities" that had allegedly received distributions from the sale of the condominium units (Wilshire alter ego defendants). The second complaint asserted claims for improper distribution, constructive trust and intentional interference with contractual relations.

Approximately six weeks before trial, Webcor, Wilshire and the Wilshire alter ego defendants entered into a settlement agreement releasing all claims related to the project. The settling parties agreed that a $32 million stipulated judgment would be entered against Wilshire on Webcor's breach of contract claim. The settlement provided, however, that no "amount of the stipulated judgment w[ould] serve as an offset or credit against [Webcor's] . . . Cause of Action . . . for Foreclosure of Mechanic's Lien . . . against Unit Owners, as [Wilshire] is an insolvent single asset limited liability company, unable to satisfy the Stipulated Judgment." The settlement included additional language clarifying that (1) the parties' agreement was not intended to impair or affect Webcor's pending lien claim against the unit owners and (2) the Wilshire alter ego defendants would "cooperate with [Webcor] in any way necessary regarding the pursuit of [its] . . . Mechanic's Lien claim against Defendant Unit Owners."

As part of the settlement, Webcor and Wilshire also agreed to adopt change order "PCCO 50," which raised the construction contract's stated GMP from approximately $81 million to $95.5 million. The agreement indicated that PCCO 50 was for "labor, materials and services provided to [Wilshire] by [Webcor] pursuant to [the] GMP Contract."

B. *The parties' motions in limine*

1. *Summary of the parties' motions in limine*

Prior to trial on the mechanic's lien claim, Webcor and the unit owners filed motions in limine seeking to exclude certain evidence related to the GMP contract. Webcor's "Motion in Limine No. 2" argued that, as a result of its settlement with the Wilshire alter ego defendants, the unit owners should not be permitted to introduce any evidence regarding the "the final GMP Contract value." Webcor asserted that, under Civil Code former section 3123, subdivision (a),[2] the amount of its mechanic's lien was "the lesser of: (1) the

---

[1] The unit owners and Wilshire both filed cross-claims against Webcor. Webcor filed a motion for summary judgment on the unit owners' cross-claims, which the trial court granted. That ruling is the subject of a separate appeal. As discussed in more detail below, Wilshire's cross-claims were released pursuant to a settlement agreement.

[2] The version of the California mechanic's lien law in effect at the time this suit was filed, found in former title 15 of part 4 of division 3 of the Civil Code (former §§ 3082–3267), was

price agreed upon between Webcor and Wilshire for the GMP Contract or (2) the reasonable value of the labor, services, equipment or materials furnished." Webcor asserted that because the settlement "established the final GMP Contract value[,] . . . the only remaining issue [to be resolved at trial] [wa]s whether the reasonable value of Webcor's materials and services [wa]s less than the final GMP Contract value."

Webcor also filed "Motion in Limine No. 3," which requested that the court "exclude Unit Owners from providing any evidence or testimony as to Wilshire['s] . . . [GMP] Contract damages or defenses." Webcor contended that the unit owners could not rely on any defenses based on the GMP contract because Wilshire had settled and released all claims related to the contract. Alternatively, it asserted that the unit owners could not assert any defenses based on the contract because they were not parties to the agreement.

In their oppositions to the motions in limine, the unit owners agreed with Webcor's assertion that, under former section 3123, subdivision (a), the amount of the mechanic's lien was the lesser of the reasonable value of Webcor's work and the "agreed upon" price of the GMP contract. The unit owners argued, however, that they should be permitted to introduce evidence establishing the true value of the GMP contract, which they believed to be significantly lower than the reasonable value of Webcor's work or the amount stated in PCCO 50. In the unit owners' view, the settling parties' attempt to "artificially set the final GMP contract" through the adoption of PCCO 50 was a "collu[sive] . . . effort to deny [them one of their] affirmative defense under Civil Code § 3123." The unit owners further explained that their right to litigate the value of the GMP contract, which included "asserting any defenses that might lower the amount of the contract . . . . stem[med] from the Civil Code § 3123 and not from the contract." (Italics omitted.)

The unit owners also filed a separate motion in limine arguing that the court should exclude any evidence related to PCCO 50, which they described as a "sham [agreement], the sole purpose of which [wa]s to attempt to injure the interests of the Unit Owners by preventing them from raising affirmative defenses to which they would otherwise be entitled."

---

repealed as of July 1, 2012, and replaced with part 6 of division 4 of the Civil Code (§§ 8000–9566). (Stats. 2010, ch. 697, § 16.) Section 8052 of the new law provides that "the effectiveness of a notice given or other action taken on a work of improvement before July 1, 2012, is governed by the applicable law in effect before July 1, 2012, and not by this part." Accordingly, prior law applies in determining the validity of the mechanic's lien claim in this case. All further statutory references are to former sections of the Civil Code.

### 2. The court's order on the parties' motions in limine

During a September 28th hearing on the parties' motions in limine, the court expressed doubt as to whether the unit owners should be precluded from challenging the value of the GMP contract set forth in the settlement agreement:

"COURT: Are you saying [the unit owners] don't have a right to attack the . . . value of the contract which was agreed after the fact as part of the settlement?

"WEBCOR: We don't believe they have a right to attack that.

"COURT: Well, that is just boggling to my mind. [¶] . . . [¶] . . . [I]t totally boggles my mind, because you could agree to anything, anything [in the settlement]." The court also stated that it saw "no purpose" for the settling parties' decision to raise the value of the GMP other than to hinder the unit owners' lien foreclosure defense. At the conclusion of the hearing, the court informed the parties that it was taking the matters under submission.

Two weeks later, the court held a second hearing on the motions in limine and asked the parties to address *ECC Construction, Inc. v. Ganson* (2000) 82 Cal.App.4th 572 [98 Cal.Rptr.2d 292] (*ECC*), a case that neither party had relied on. The court cited to language in *ECC* indicating that when a claimant seeks to enforce a mechanic's lien against a property owner who was not a party to the original construction contract, former section 3123, subdivision (a) required that the amount of the lien be determined based solely on "the reasonable value of the labor, services, equipment, and materials." The court further explained that, under *ECC*'s construction of former section 3123, the value of the GMP contract was not relevant to determining the amount of Webcor mechanic's lien because the unit owners were not parties to that agreement.

In response, the unit owners argued that *ECC*'s discussion of former section 3123 was merely dicta and conflicted with the plain language of the statute. The unit owners also asserted that Webcor had never argued that the agreed-upon price of the GMP contract was not relevant to determining the amount of the lien; rather, it had argued that the value of the GMP contract need not be litigated because the settlement had "set [the] agreed-upon price."

The trial court, however, concluded that *ECC* was "[directly] on point" and demonstrated that "whatever agreement that Webcor entered into with Wilshire altering the contract is not relevant, as far as this court is concerned, to any analysis whatsoever. . . . We are proceeding [only] on the reasonable

value of the services." Following the hearing, the court issued an "order re motions in limine" clarifying its ruling: "1. The standard under Civil Code 3123 for a contractor to recover on a mechanic's lien against owners of the property where the owners are a non-party to the construction contract, but inhabit the structure that has been improved, is the reasonable value of the labor, material, equipment and services provided by the contractor to the owners of the property. See *ECC*[, *supra*,] 82 Cal.App. 292. [¶] 2. As a result, and since the court has ruled that the unit owners are not Third Party Beneficiaries, Unit Owners are precluded from asserting any contractual defenses or contract damages including liquidated damages. [¶] 3. Based on this ruling, PCCO 50 and the related settlement agreement are irrelevant."

On October 17, 2012, the unit owners filed a petition for a writ of mandate directing the superior court to withdraw its ruling on the parties' motions in limine and enter a new ruling that (1) "appl[ies] the 'price agreed upon' and the 'reasonable value' limitations found in . . . Civil Code section 3123(a) . . . the controlling statute of this action, with respect to the maximum mechanic's lien amount of . . . Webcor Construction" and (2) allows the unit owners to "pursue defenses and arguments based on the construction contract on which Webcor's mechanic's lien is based."

We issued an order staying the trial court proceedings and a separate order to show cause.

## DISCUSSION

### A. *Standard of Review*

" 'A motion *in limine* is made to exclude evidence before the evidence is offered at trial, on grounds that would be sufficient to object to or move to strike the evidence. . . .' [Citation.] Generally, a trial court's ruling on an in limine motion is reviewed for abuse of discretion. [Citation.] However, when the issue is one of law, we exercise de novo review." (*Condon-Johnson & Associates, Inc. v. Sacramento Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1392 [57 Cal.Rptr.3d 849].) The trial court's order on the parties' motions in limine was predicated on its interpretation of former section 3123, subdivision (a). "Statutory construction is a question of law we decide de novo. [Citation.]" (*Britton v. Dallas Airmotive, Inc.* (2007) 153 Cal.App.4th 127, 131 [62 Cal.Rptr.3d 487] (*Britton*).)

### B. *The Trial Court Erred in Interpreting Civil Code Former Section 3123, Subdivision (a)*

■ California's mechanic's lien law (former § 3082 et seq.), which was derived from a constitutional mandate to protect laborers and materialmen

(Cal. Const., art. XIV, § 3), permitted a person who furnished labor or materials on a work of improvement, and who was owed money on the project, to file a lien against the real property upon which the work was located. (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 808 [132 Cal.Rptr. 477, 553 P.2d 637].) "[A] mechanic's lien attaches to the improved property when the first labor or construction material is furnished for the construction work . . . [and] cannot be defeated or otherwise affected by the conveyance of the property after the lien attaches." (*Forsgren Associates, Inc. v. Pacific Golf Community Development LLC* (2010) 182 Cal.App.4th 135, 147–148 [105 Cal.Rptr.3d 654], citation omitted.)

■ The sole issue presented in this petition for writ of mandate is whether the trial court properly interpreted former section 3123, subdivision (a), which established the amount of a mechanic's lien. "Our primary objective in interpreting a statute is to determine and give effect to the underlying legislative intent. [Citation.] We begin by examining the statutory language, giving the words their usual, ordinary meanings and giving each word and phrase significance. [Citation.] . . . 'If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.]" (*Britton, supra,* 153 Cal.App.4th at pp. 131–132.) "The words must be construed in context, and provisions relating to the same subject matter or that are part of the same statutory scheme must be read together and harmonized to the extent possible. [Citation.]" (*Bode v. Los Angeles Metropolitan Medical Center* (2009) 174 Cal.App.4th 1224, 1237 [94 Cal.Rptr.3d 890].)

Former section 3123, subdivision (a) stated, in relevant part, that "[t]he liens provided for in this chapter shall be . . . for the reasonable value of the services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less." The trial court interpreted this provision to mean that, in cases where the claimant is attempting to enforce the lien against a property owner who was not a party to the construction contract, the amount of the lien is determined based solely on the "reasonable value" of the completed work. As the trial court's order makes clear, its construction of the statute was based on language in *ECC, supra,* 82 Cal.App.4th 572.

■ The trial court's interpretation is inconsistent with the plain language of the statute. Subdivision (a) of former section 3123 stated that a mechanic's lien shall be for the lesser of two values: (1) the reasonable value of the services, equipment, or materials furnished or (2) the "price agreed upon by the claimant and the person with whom he or she contracted." The statutory language includes no limitation that renders the second measure of value inapplicable when the claimant is attempting to enforce the lien against a

property owner who was not a party to the contract for work. If the Legislature had intended such a limitation, it could have altered the statutory language to state that the amount of the lien is the lesser of the reasonable value of the work and the price agreed upon by the claimant and the person against whom the lien is being enforced. The Legislature did not do so. Here, the claimant, Webcor, and the entity with whom it contracted, Wilshire, agreed upon a price pursuant to the GMP contract. Accordingly, under the plain language of the statute, the amount of Webcor's mechanic's lien is the lesser of (1) the reasonable value of its work or (2) the value of the GMP contract.

■ The trial court's interpretation of former section 3123, subdivision (a) would also create a conflict with former section 3140 of the mechanic's lien law. (See *Bright v. 99¢ Only Stores* (2010) 189 Cal.App.4th 1472, 1478 [118 Cal.Rptr.3d 723] ["It is a 'basic rule of statutory construction [that] insofar as possible, we must harmonize code sections relating to the same subject matter . . . .' "].) Former section 3140 stated, in relevant part: "Any original contractor . . . shall be entitled to recover, upon a claim of lien recorded by him, only such amount as may be due him according to the terms of his contract after deducting all claims of other claimants for labor, services, equipment, or materials furnished and embraced within his contract." The statute codified the long-adopted rule in this state that "[i]f there is a valid contract, the contract price measures the limit of the amount of the liens which can be acquired against the property by laborers and materialmen." (*Roberts v. Spires* (1925) 195 Cal. 267, 270 [232 P. 708].)

If former section 3123 were interpreted to permit recovery of the reasonable value of the contractor's work whenever the property owner was not the contracting party, a contractor could obtain a lien in an amount that exceeded the contracted price if (1) the lien was being enforced against a property owner who was not a party to the contract and (2) the reasonable value of the work exceeded the contracted price. Assume, for example, that the evidence at trial in this case shows that the price Webcor and Wilshire agreed upon in the GMP contract was $80 million, but the reasonable value of Webcor's work was $90 million. Under the construction of former section 3123 adopted by the trial court, the amount of Webcor's lien would be $90 million despite the fact that it contracted to do the work for $80 million. Such an outcome directly conflicts with former section 3140, and we do not read the language of the statute to permit that result.

The trial court's interpretation of former section 3123 was based on comments in *ECC, supra*, 82 Cal.App.4th 572 regarding the amount of a mechanic's lien. The primary issue in ECC was whether a contractor's failure to comply with certain notice requirements precluded it from enforcing a

mechanic's lien. The plaintiff had entered into a contract with a homeowners association to repair several condominium units. After a payment dispute arose, the plaintiff recorded "a 'blanket' mechanic's lien, e.g., a lien against an entire condominium complex, including the individual units, which does not allocate the amount of the lien per homeowner." (*Id.* at p. 578.) The plaintiff then filed a foreclosure of mechanic's lien claim against the homeowners association and the individual condominium unit owners, who were not parties to the repair contract. The unit owners moved for summary judgment and trial court granted the motion, leaving the association as the sole defendant.[3]

The appellate court affirmed, explaining that, "in the context of condominium ownership," section 1369 required a "contractor . . . [to] notify each owner of the 'fraction of the total sum secured by the lien which is attributable to his or her condominium.' [Citation.]" (*ECC, supra,* 82 Cal.App.4th at p. 578.) The court further explained that "by failing" to "apportion[] the lien per owner[, the contractor] . . . lost the ability to enforce the lien against the individual homeowners." (*Ibid.*)

During its discussion of the contractor's mechanic's lien claim, however, the court included a general comment about former section 3123, subdivision (a): "By statute, the amount of the lien is the lesser of (1) the price agreed upon by the claimant and the contracting party, and (2) the reasonable value of the labor, services, equipment, or materials furnished. (Civ. Code, § 3123, subd. (a).) Here, there was no 'agreed price' or contract between [plaintiff] and the individual homeowners. Consequently, as to each owner, [plaintiff] would be entitled to the reasonable value of its work on that owner's unit, plus the owner's share of the cost to repair the common areas." (*ECC, supra,* 82 Cal.App.4th at p. 578, fn. omitted.)

For the reasons discussed above, we disagree with *ECC* to the extent it implies that, under former section 3123, subdivision (a), the amount of a mechanic's lien is determined based solely on the reasonable value of the work if the claimant and the party against whom the lien is being enforced do not have a contractual relationship. Such an outcome is inconsistent with the language of the statute and creates a conflict with another provision of the mechanic's lien law.

█ Moreover, when *ECC* is read in its entirety, it is apparent that the court's observations regarding former section 3123 were purely dicta, and

---

[3] The trial court also ruled that the condominium owners were entitled to judgment on the plaintiff's breach of contract claim because the evidence showed that they were not parties to the underlying contract, which had been executed by the homeowners association. The appellate court affirmed, concluding that the Corporations Code precluded the plaintiff from recovering contract damages from the individual property owners.

therefore, have no force as precedent. "In every case, it is necessary to read the language of an opinion in light of its facts and the issues raised, in order to determine which statements of law were necessary to the decision, and therefore binding precedent, and which were general observations unnecessary to the decision. The latter are dicta, with no force as precedent." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1301 [77 Cal.Rptr.2d 296].) In ECC, the appellate court ruled that the plaintiff could not enforce its lien against the individual homeowners because it failed to comply with section 1369's notice requirements. The court's observations about former section 3123 were neither necessary nor relevant to this holding.

Although dicta does not " 'possess the force of a square holding[, it] may nevertheless be considered highly persuasive, particularly . . . when made . . . in the course of an elaborate review of the authorities' " (*Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1473 [37 Cal.Rptr.2d 769] (*Mero*)), " 'where it demonstrates a thorough analysis of the issue' " (*People v. Smith* (2002) 95 Cal.App.4th 283, 300 [115 Cal.Rptr.2d 483]) or " 'when it has been long followed.' [Citations.]" (*Mero, supra,* 31 Cal.App.4th at p. 1473.) None of those factors are present here. *ECC*'s discussion of former section 3123, subdivision (a) appears in a three-sentence paragraph that does not cite any legal authorities other than the statute itself. In addition, the parties have not identified a single published decision that has followed *ECC*'s construction of the statute.

■  In summary, the trial court erred in its construction of former section 3123. Under former section 3123, subdivision (a), the amount of Webcor's mechanic's lien is the lesser of (1) the price agreed upon in the GMP contract or (2) the reasonable value of Webcor's work.[4]

### C.   On Remand, the Trial Court May Evaluate Whether the Settlement Agreement Conclusively Establishes the Value of the GMP Contract

Webcor argues that, even if the trial court erred in adopting *ECC*'s construction of former section 3123 subdivision (a), we may nevertheless affirm its order precluding the unit owners from introducing evidence regarding the value of the GMP contract because the settlement agreement establishes that the value of the contract is $95.5 million. In the trial court, the unit

---

[4] The California Land Title Association has filed an amicus curiae brief in support of the unit owners arguing that, in addition to conflicting with the statutory language, the trial court's interpretation would have numerous "negative consequences for California's real property market and economy as a whole." Having concluded that the trial court's interpretation is inconsistent with the language of former section 3123, we need not address amicus curiae's policy-based arguments.

owners opposed this argument, asserting that the settling parties had colluded to artificially increase the purported value of the GMP contract in an effort to hinder the owners' ability to defend against the lien.

The trial court determined that it need not resolve the issue because, under its interpretation of former section 3123, subdivision (a), the value of the GMP contract was not relevant to determining the amount of the mechanic's lien. The court did, however, express doubt as to whether the settlement agreement conclusively established the value of the GMP contract, stating that it was "boggled" by Webcor's assertion that the unit owners were precluded from "attack[ing] the . . . value of the contract which was agreed after the fact as part of the settlement." The court also indicated that it would have difficulty deciding whether the settlement agreement was a "sham" without considering extrinsic evidence.

We, like the trial court, have serious doubts as to whether Webcor can properly establish the "agreed upon" price of the GMP contract based solely on statements in a settlement agreement. involving a defendant that is acknowledged to have no remaining assets. However, given the limited record before us, and the stage of these proceedings, we think it proper to remand the issue to the trial court, which may conduct whatever additional factual and legal inquiries are necessary to decide the matter.[5]

## DISPOSITION

The petition is granted and the trial court is ordered to withdraw its "order on motions in limine" dated October 15, 2012. On remand, the court shall enter a new order reflecting that, under former section 3123, subdivision (a), the amount of Webcor's mechanic's lien against the property shall be for the

---

[5] Webcor also argues that we should affirm the trial court's order excluding evidence related to the value of the GMP contract because, under former section 3123, subdivision (b), it "is entitled to the reasonable value of the labor services, equipment and materials it furnished to Wilshire as a result of Wilshire's breach of contract." Subdivision (b) permits claimants to include in the lien "any amount due for [work] . . . furnished . . . as a result of the . . . breach of the contract." It further provides that, in the event of a breach of contract, the amount of the lien "may not exceed the reasonable value of the [work] . . . furnished by the claimant." Even if we accept Webcor's conclusory factual assertion that Wilshire breached the GMP contract, we fail to see how subdivision (b) supports the trial court's conclusion that the value of the GMP contract is not relevant to determining the amount of the mechanic's lien. The subdivision does not state that, in cases where a breach of contract is proven, the amount of the lien is to be determined based solely on the reasonable value of the work. It merely states the amount a claimant may recover for work furnished as the result of a breach of contract may not exceed the reasonable value of that work.

lesser of two values: (1) the reasonable value of the services, equipment, or materials furnished or (2) the "price agreed upon" under the GMP contract.[6]

Petitioners shall recover their costs on appeal.

Perluss, P. J., and Jackson, J., concurred.

---

[6] On December 3, 2012, Webcor filed a motion requesting that we take judicial notice of various legislative documents. None of the materials are relevant or necessary to our analysis. We therefore deny the motion. (See *Surfrider Foundation v. California Regional Water Quality Control Bd.* (2012) 211 Cal.App.4th 557, 569, fn. 7 [149 Cal.Rptr.3d 763] [denying request for judicial notice where documents were "not relevant to [court's] analysis"]; *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [76 Cal.Rptr.2d 749, 958 P.2d 1062] [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)