Filed 4/21/16  Brown v. L.A. County Dept. of Children and Family Services CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| MARIE BROWN<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Defendant and Respondent. | B259310<br><br>(Los Angeles County<br>Super. Ct. No. BC499438) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael M. Johnson , Judge.  Affirmed.

Lyon Law, Geoffrey C. Lyon, Ryan M. Estes and Mazen Khatib for Plaintiff and Appellant.

Hausman & Sosa, Larry D. Stratton, Lisa A. Grigg and Jeffrey M. Hausman for Defendant and Respondent.

The Los Angeles County Department of Children and Family Services (DCFS) discharged Marie Brown from her position as a human services aide in June 2009. Brown appealed the discharge to the Los Angeles County Civil Service Commission ("the Commission"), which ultimately ordered her reinstated to her position. Unbeknownst to the Commission, however, Brown had retired during the pendency of her appeal. Claiming it could not rehire a retiree in light of Los Angeles County Board of Supervisors Policy 9.150, DCFS separated Brown from her employment a second time days after she returned.

Brown filed suit under the Fair Employment and Housing Act (Gov. Code, § 12940, et seq.),[1] alleging that she was retaliated against and discharged due to her disabilities. Prior to trial, Brown moved in limine to exclude what she termed DCFS's "improper mistake-of-law evidence." She contended that DCFS misinterpreted the law regarding the reinstatement of retirees and therefore should be precluded from introducing testimony, documents, exhibits, and references to that purported rationale for discharging her. The trial court denied Brown's motion, and DCFS introduced evidence pertaining to Policy 9.150 and the Government Code sections underlying it. The jury found by special verdict that DCFS reasonably accommodated Brown's disabilities and did not discharge her because of her disabilities or her requests for accommodation. The trial court entered judgment for DCFS in accordance with the jury's verdict. Brown contends the judgment must be reversed because the trial court erroneously denied her motion in limine. We disagree and affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts were adduced at trial. Brown injured her back and neck in 1996 and consequently received certain accommodations in her position as a DCFS human services aide. Brown aggravated her injuries in the summer of 2008 while organizing files at work and requested an evaluation. Around the same time, she testified at a court hearing on behalf of DCFS without the advance knowledge or permission of

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

2

her supervisor. During its investigation of the court incident, DCFS placed Brown on restricted duty, which Brown claims further aggravated her back injuries and caused her psychological stress. Citing the court incident and Brown's responses to it, DCFS terminated Brown effective June 29, 2009, a few months after she experienced chest pains at work, and the same day on which she underwent bariatric surgery.

Brown appealed her termination to the Commission by letter dated July 8, 2009. On September 16, 2009, the Commission granted Brown's request for a hearing, which was scheduled for March 29, 2010. While she was waiting for her hearing, Brown, who had been working for the county in various capacities since 1979, completed and submitted the paperwork for a service retirement. LACERA sent Brown a letter dated October 1, 2009 congratulating her on her "new status as a retired member of LACERA" and informing her that her retirement would be effective November 21, 2009. The letter was copied to an unnamed "CHILDREN'S SERVICES Personnel Officer." DCFS human resources personnel Wanda Hazel and Lynne Bowles Condon testified they never received this letter and became aware of Brown's retirement only years later; LACERA employee J.J. Popowich testified that such a situation was not unprecedented. Brown testified she never informed anyone at DCFS that she retired prior to filing the instant lawsuit.

Union representative and civil service advocate Lyle Fulks testified that it would have been important to notify the Commission that Brown had retired during the pendency of her appeal.[2] Nevertheless, neither Brown nor DCFS informed the

---

[2] Some courts, including this one, have held that a civil service commission loses jurisdiction over an employee's appeal if he or she voluntarily retires during the pendency of civil service proceedings. (See *Zuniga v. Los Angeles County Civil Service Commission* (2006) 137 Cal.App.4th 1255, 1259-1260; *County of Los Angeles Department of Health Services v. Civil Service Commission of the County of Los Angeles* (*Latham*) (2009) 180 Cal.App.4th 391, 400-401.) Others have reached the opposite conclusion. (See *Hall-Villareal v. City of Fresno* (2011) 196 Cal.App.4th 24, 31-33; *Hughes v. County of San Bernardino* (2016) 244 Cal.App.4th 542, 551-553.) Although Brown argues that her retirement did not divest the Commission of jurisdiction over her initial appeal, we need not and do not reach the issue for two reasons: (1) neither Brown

Commission of Brown's retirement before, during, or after the March 29, 2010 hearing. The hearing officer submitted a written decision to the Commission on June 7, 2010. In it, he concluded that DCFS met its burden of proof on only two of its eight allegations against Brown—that she withheld information from and was discourteous to supervisors—and accordingly found "the drastic remedy taken by the Department of discharging this employee was not supported by the evidence." In an addendum dated August 12, 2010, the hearing officer submitted to the Commission formal findings of fact and conclusions of law, along with a recommendation that Brown's termination be reduced to a 25-day suspension.

DCFS filed objections to the hearing officer's proposed decision and recommendations on October 12, 2010. The Commission overruled the objections and adopted the hearing officer's decision and recommendations as its own final decision on January 26, 2011. The Commission notified Brown and DCFS of its decision on February 2, 2011. Neither Brown nor DCFS sought writ review of the decision.

On May 10, 2011, DCFS employee relations manager Condon sent Brown a letter informing her that she was "reinstated to County service and will receive retroactive pay and/or benefits from June 29, 2009, less the 25 day suspension period." The letter further informed Brown that her retroactive pay "must be offset by any outside employment earnings" and directed her to provide DCFS with "documentation of any earnings or a written statement that you did not have any earnings from June 29, 2009 up until present." Enclosed with the letter was a one-page Declaration of Earnings form on which Brown could provide the requested information.

Brown found the form confusing and called the DCFS personnel department for assistance in completing it. Brown testified that the person to whom she spoke told her to write down the unemployment insurance benefits she received but did not mention

nor DCFS sought writ review of the Commission's decision, which has long since become final regardless of whether it was voidable on jurisdictional grounds and (2) the trial court precluded DCFS from introducing evidence or arguing that the Commission lost jurisdiction over Brown after her retirement and DCFS has not challenged that ruling.

4

anything about retirement benefits. Brown disclosed on the Declaration of Earnings form only the $34,006.00 she received in unemployment insurance benefits and signed the form under penalty of perjury on May 12, 2011.

By letter dated June 16, 2011, DCFS notified Brown that it did not have any vacancies for human services aides in the Antelope Valley, Brown's preferred geographic location. DCFS provided Brown with a list of seven other offices with available positions and asked Brown to choose one. Brown responded by letter dated June 20, 2011, stating she was "dismayed and disappointed" at being unable to return to her previous position. Brown stated that traveling to any of the available offices would "be a HARDSHIP for me" because she "moved from Los Angeles to Palmdale to be closer to my home, job and health reason [*sic*]." She also asked if DCFS had the option to promote her to the position of children's social worker II, a position for which she previously obtained a score of 100 on the civil service exam. In a second letter dated June 23, 2011, Brown chose the West L.A. office but reiterated, "It's not fair, I was wrongfully terminated by County of Los Angeles Department of Children and Family Services. Now I have to communite [*sic*] 150 miles a day. When my department was 1.5 miles from home. This is a hardship for me. I have over 31.5 years with the County."

At some point, DCFS informed Brown that the West L.A. office either closed or relocated. Brown was then assigned to the Metro North office, a placement reflected on a payroll form dated August 3, 2011 and in a Notice of Assignment letter dated September 26, 2011 that DCFS sent to Brown. The Notice of Assignment letter instructed Brown to report to the Metro North DCFS office on October 3, 2011. Brown did not report for duty, however, because her psychologist deemed her temporarily totally disabled until November 3, 2011. Brown's psychologist also recommended that Brown "needs to be relocated no further than Santa Clarita." Brown's period of disability later was extended to December 15, 2011 and extended again through January 9, 2012.

On October 14, 2011, LACERA sent Brown a letter acknowledging her interest in returning to active membership from retired status. The letter explained that LACERA was governed by two sections of the County Employees Retirement Law of 1937,

Government Code sections 31680.4 and 31680.5.[3]  The letter was copied to Wanda Hazel, a DCFS human resources manager.

On October 24, 2011, LACERA member services manager J.J. Popowich sent another letter to Hazel.  The letter, which "follow[ed] up on a message" left for Hazel on October 21, 2011, stated that Brown retired on November 21, 2009 but was being reinstated to her position.  It continued, "Unfortunately as a LACERA retired member Ms. Brown is not eligible for reinstatement back to her date of termination.  There are no provisions in the County Employees Retirement Law of 1937 that allow a member to rescind their retirement after their retirement date, nor are there any provisions allowing for the unwinding of a retirement due to a reinstatement decision.  [¶]  However, there is a process whereby a retired member may return to work upon approval of the Board of Supervisors, Board of Retirement, and upon obtaining medical documentation that she is able to return to work and perform her duties.  I am enclosing a 'Return to Work' package which outlines how she may return to work.  This same information has been provided to Ms. Brown."  Hazel testified that she did not know Brown had retired until she received this letter.  Condon likewise testified that she was unaware of Brown's retirement until Hazel showed her the letter and, moreover, that she and Hazel "were both very, very shocked" by it.

---

[3] Government Code section 31680.5 is not relevant to this appeal.  Government Code section 31680.4 provides:  "Notwithstanding any other provision of law, a member retired for service and reemployed in a county or district under this chapter shall become again an active member of the retirement association upon (a) his or her application to the board for reinstatement, (b) the determination of the board, based upon medical examination, that he or she is not incapacitated for the duties assigned to him or her; and (c) meeting the conditions for membership in Article 4 (commencing with Section 31550) are met [*sic*].  [¶]  For the purposes of this section, the effective date of the member's reinstatement to active membership shall be the first day of the month following the date of reemployment.  [¶]  Except as permitted in Section 31680.2 or 31680.3, the retirement allowance of the member shall be canceled on the effective date of the member's reemployment and shall be resumed only upon the subsequent termination of the member from employment.  [¶]  This section shall not be operative in any county until the board of supervisors, by resolution adopted by a majority vote, makes this section and Section 31680.5 operative in that county."

On December 22, 2011, DCFS sent Brown a Notice of Intent to Discharge by certified mail.  Brown had not yet reported for work at the Metro North Office and was still on disability leave at this time.  The Notice, which was signed by Condon, did not mention Brown's disabilities.  It explained that the bases for the discharge were "the independent incidents of your failure to disclose your retired status during and after your Civil Service Commission hearing, failure to disclose receipt of retirement benefits to the Department, and the Department's prohibition from reinstating a retiree absent the fulfillment of specialized criteria."  The letter cited Government Code sections 31680.4 and 31680.5, along with Policy No. 9.150[4] in support of the latter ground.

On December 27, 2011, Popowich of LACERA sent a letter to the head of DCFS personnel operations.  The letter stated that LACERA was "unsure of [Brown's] current status."  The letter explained that Brown had been paid in November but not in December and was shown as active in a county employee database.  It continued, "Unfortunately, we do not have any records indicating that she has completed the return to work process," a "County process whereby a retired member may return to work upon approval of the Board of Supervisors, the Board of Retirement, and after obtaining medical

---

[4] Policy 9.150, which the  Los Angeles County Board of Supervisors adopted in July 1993 "to implement provisions of amendments to Government Code Sections 31680.4 and 31680.5,"  provides:  "The County may hire former retired County employees to permanent positions on an indefinite basis.  The Board's action provides the County with an additional management tool to fill critical, emergent, or hard to fill positions which require special skills, training and experience or certification and may not be reasonably filled by other than the County retiree.  Such authorizations must be approved by the Board of Supervisors. Departments are to submit a Board memo to their Chief Executive Office (CEO) budget analyst prior to filling any position on an indefinite basis with a County retiree.  The memo, with CEO recommendation, will be forwarded to the Board for approval, stating that a two-week period exists for a Board member to request formal action prior to filling the position.  [¶]  The retired employee being hired must cancel his/her retirement allowance through the Board of Retirement until termination of the new re-employment.  This policy does not replace the statute which allows rehiring retired county employees temporarily for up to 120 days per fiscal year. [¶]  Retirees under the Early Separation Plan are not eligible to fill these positions without direct Board approval."

7

documentation that she is able to return to work." The letter further stated that "if she is working for the County at this time she is in violation of County policy. This policy was created to ensure that the County and LACERA remained in compliance with IRS tax regulations regarding retired members working for the plan sponsor."

Brown reported to the Metro North office on January 10, 2012, the day her doctor ended her temporary period of total disability. According to Brown's testimony, two days later, on January 12, 2012, "Lynne Condon and George Smith came to the office and took my badge and had me leave." By letter dated January 12, Condon informed Brown that she was "prohibited from returning to active status" pursuant to Policy 9.150 "without the satisfaction of special requirements and qualifications." The letter instructed Brown "to return home and not report to work until those requirements are satisfied and/or resolved. According to County policy, allowing a retiree to work, absent qualifying grounds, is strictly prohibited." Hazel testified that those "special requirements and qualifications" included a critical need to return the employee and the employee's possession of special skills. Hazel conceded that all DCFS positions are critical to the mission of the department but stated there was no difficulty recruiting people to fill human services aide positions; to the contrary, there were "on average, 3- to 4,000 applicants for the HSA position." She further testified that she had never heard of any retired employee being approved to come back as a full-time employee, adding, "there have been request[s], and they've never been successful."

On January 30, 2012, DCFS issued Brown a Notice of Discharge, invoking the same grounds as the Notice of Intent to Discharge. Brown sought relief before the Commission, but withdrew her claim the day before the scheduled January 17, 2013 hearing.[5] She filed her initial complaint in the instant action on January 18, 2013, and the operative first amended complaint on July 1, 2013. She alleged four causes of action:

---

[5] Brown also applied for and obtained a disability retirement from LACERA, which Popowich testified means she receives 50 percent of her human services aide salary and, "[a]s far as the Board of Retirement is concerned, they have found her incapacitated from the duties of her job."

8

"disability discrimination" (Gov. Code, § 12940), "medical leave discrimination and retaliation" (§ 12945.2), "retaliation for attempting to and exercising rights under, including opposing violations of, Gov't Code Part 2.8 (FEHA; Gov't Code §§ 12900-12996)" (§ 12940, subd. (h)), and "failure to prevent discrimination" (§ 12940, subds. (j) & (k)). The trial court denied DCFS's motion for summary judgment, ruling that triable issues of fact existed.

On August 1, 2014, the Friday before trial was set to begin, Brown filed motion in limine no. 4. In that motion, Brown asked the court to "exclude any statements by defense counsel, Defendant, or Defendant's percipient or expert witnesses in support of a mistake-of-law defense as an excuse for Defendant's failure to reinstate Plaintiff Marie Brown to her previous job." Brown argued that DCFS "repeatedly misreads Government Code 31680.4 to argue that as a condition of reemployment Brown had to (1) obtain approval of the LACERA Board and (2) obtain medical certification she could perform her assigned duties at DCFS." Brown contended DCFS's reliance "on an incorrect interpretation of Government Code 31680.4 to justify its failure to reinstate Plaintiff to her job due to her previous retirement" was an improper mistake-of-law defense that could not "shield" DCFS "against civil liability for its illegal discrimination." Even if DCFS's interpretation of the law was reasonable initially, she further argued, it "became unreasonable upon the Civil Service Commission's ruling that Plaintiff was wrongfully terminated, its subsequent order to reinstate Plaintiff to her previous job, and LACERA's multiple notification letters to Defendant indicating that Plaintiff was eligible to return to work."

The court heard and denied the motion on August 5, 2014, before the parties' opening statements. The court explained: "Well, the motion goes to evidence, and I will deny the motion. I will say I'm not going to give instructions as to mistake of law or things that one might regard as an affirmative defense, but as for the evidence, I think it's appropriate. This is a discrimination case, and so intent and motive are key issues, and the defendant can introduce evidence that goes to its state of mind, its intent, its motive, its reasons. I will - - I'll acknowledge it gets a little muddled as to what was going on

9

during that period, but they can certainly present what their position was, and I recognize that there are countervailing arguments that it doesn't sound - - that plaintiff's position is, well, it doesn't sound genuine. But that's ordinarily, what pretext and the dispute on that are all about. So the facts can be presented to the jury. The arguments can be made, and they'll make their determinations."

DCFS accordingly presented evidence and argued that it released Brown in January 2012 "because she - - she had retired from the county" and "under the law we can't take her back." DCFS further argued that "even if the county was wrong" in its understanding of Policy 9.150 and related Government Code sections, "that does not equal intentional discrimination retaliation" because "the 2012 release had nothing to do with her medical condition."

The jury evidently found these contentions persuasive. By special verdict, it unanimously found that DCFS provided reasonable accommodations to Brown, that Brown's work restrictions and disability leave were not "a motivating reason for the County of Los Angeles's decision in 2011/2012 to discharge Marie Brown," and that Brown's physical or mental condition was not "a substantial motivating reason for The County of Los Angeles's decision to discharge" her. The court entered judgment in accordance with the jury's verdict. Brown timely appealed.

## DISCUSSION

Brown claims that the trial court erred in denying her motion in limine. She contends that DCFS's purported motivation in terminating her was "based upon a mistake of law" and, because "substantial authority unequivocally holds that evidence supporting a mistake-of-law defense is inappropriate to present to a jury in a civil case," it was "improper to allow evidence and argument regarding it." She further argues that the Commission's order was binding and "was entitled to *res judicata* and collateral estoppel effect," and DCFS made an additional mistake of law by disregarding it. Brown devotes the remainder of her opening brief to expounding upon the nature of DCFS's mistakes: she contends that DCFS "relied upon a substantially inaccurate reading" of section 31680.4 when it should have reinstated her pursuant to the Commission's order and

10

section 31680.7, and that DCFS erroneously suggested to the trial court (but not to the jury) that the Commission lacked jurisdiction to reinstate her due to her retirement. We conclude the court's ruling allowing DCFS to present evidence of its legitimate, nondiscriminatory reasons for terminating Brown was not erroneous. Therefore, we need not address Brown's specific contentions regarding why (or whether) DCFS was mistaken on the law.

## I.     Standard of Review

We generally review trial court rulings on motions in limine for abuse of discretion. (*Condon-Johnson & Associates, Inc. v. Sacramento Municipal Utility District* (2007)149 Cal.App.4th 1384, 1392.) "However, when the issue is one of law, we exercise de novo review." (*Ibid.*) Brown argues the issue here is one of law, because she "contended that DCFS should not be allowed to introduce evidence that it had a policy against hiring retirees when that policy was contrary to both well-established law and the order of the Civil Service Commission that directed DCFS to reinstate her." We do not find this argument persuasive. Unlike the cases Brown cites, the court's order on the motion in limine was not predicated on the interpretation of a statute (*Appel v. Superior Court of Los Angeles County* (2013) 214 Cal.App.4th 329, 336) or construction of statutory language (*Condon-Johnson & Associates, Inc. v. Sacramento Municipal Utility District*, *supra*, 149 Cal.App.4th at p. 1392). We accordingly conclude that abuse of discretion is the proper standard of review. Of course, "'a court's discretion is limited by the legal principles applicable to the case.' [Citation.] 'Thus, if the trial court's in limine ruling was based upon a misinterpretation of applicable law, an abuse of discretion has been shown.' [Citation.]" (*McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 670.)

## II.     Analysis

In employment discrimination cases such as this one, in which there is no direct evidence of the employer's alleged discriminatory motivation for the adverse action, California has adopted the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Guz*

11

*v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 130.)  Under that test, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. (*Guz*, *supra*, 24 Cal.4th at p. 354.)  This burden is "'not onerous.'" (*Id.* at p. 355.)  A prima facie case of disability discrimination under FEHA requires the employee to show he or she (1) suffered from or was regarded as suffering from a disability, (2) was otherwise qualified to do his or her job with or without reasonable accommodations, and (3) was subjected to adverse employment action because of the disability or perceived disability.  (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 310; see also *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 378.)  "Once the employee establishes his or her prima facie case, 'the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action.' [Citation.]" (*Nealy v. City of Santa Monica*, *supra*, 234 Cal.App.4th at p. 378.)  The employee may still defeat the employer's showing at the third stage, if he or she can present "evidence that the stated reason is pretextual, the employer acted with discriminatory animus, or other evidence permitting a reasonable trier of fact to conclude the employer intentionally discriminated." (*Ibid.*)  "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff" at all times.  (*Guz, supra*, 24 Cal.4th at p. 356.)

The motion in limine at issue was targeted at the second stage of the three-stage process.  Brown sought to preclude DCFS from introducing evidence that it had a legitimate, nondiscriminatory reason for taking an adverse employment action against her, namely the strictures of Policy 9.150.  Brown argued below, and argues now, that Policy 9.150 is not a "legitimate" reason because it rests upon an incorrect interpretation of section 31680.4.  However, the reason(s) proffered by an employer "need not necessarily have been wise or correct." (*Guz*, *supra*, 24 Cal.4th at p. 358.)  "While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.  Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of*

*discrimination.*" (*Ibid.* [emphasis in original].) In other words, an employee cannot prevail merely by showing that the employer's rationale was incorrect or mistaken. He or she must "'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [asserted] non-discriminatory reasons." [Citations.]' [Citations.]" (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.)

The trial court correctly recognized these overarching principles when it denied Brown's motion in limine. It explained that "intent and motive are key issues, and the defendant can introduce evidence that goes to its state of mind, its intent, its motive, its reasons." We agree. A defendant employer is entitled to rebut the plaintiff's prima facie case of discrimination by presenting evidence of the reasons underlying the contested adverse action, and the plaintiff is entitled to undertake efforts to undermine, discredit, or disprove those reasons. So long as the reasons DCFS proffered were "facially unrelated to prohibited bias" and, "if true, would thus preclude a finding of discrimination" (*Guz*, *supra*, 24 Cal.4th at p. 358 [emphases omitted]), and were in the form of otherwise admissible evidence, it was proper for the trial court to let the jury consider it. The trial court did not abuse its discretion by denying Brown's motion in limine.

We are not persuaded otherwise by Brown's contention that the court's ruling permitted DCFS to present a forbidden "mistake of law defense." Brown is correct that, as a general rule, ignorance or a mistaken understanding of a civil or criminal law is no defense to liability. (See *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.* (2010) 559 U.S. 573, 581.) "A mistake of law, in its strict sense, means ignorance that the penal law (of which one stands accused) prohibits one's conduct—and ignorance on this point 'is almost never a defense.' [Citation.]" (*People v. Meneses* (2008) 165 Cal.App.4th 1648, 1662-1663.) DCFS was not asserting that it misunderstood FEHA or was unaware of its obligations under the law; it therefore was not mounting a mistake of law defense. Instead, it claimed that Policy 9.150 precluded Brown and all other retired

13

employees from returning to permanent duty absent special circumstances not present here.  In other words, DCFS invoked a facially nondiscriminatory rationale for the actions it took against Brown in 2012, a valid argument in this employment discrimination case.  DCFS's alleged disregard of the Commission's order of reinstatement likewise was not a mistake of law defense; to the contrary, DCFS introduced evidence that it took steps to comply with the order, while Brown claimed that DCFS improperly disregarded it.  Moreover, res judicata and collateral estoppel are not relevant here, because DCFS did not attempt to relitigate the causes of action or issues underlying the Commission's order.  (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  DCFS's claim that its actions were constrained by Policy 9.150 was permissible under the burden-shifting framework, and the trial court properly allowed the jury to resolve the resultant issues of fact it presented.

## DISPOSITION

The judgment of the trial court is affirmed.  DCFS is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.

14