Filed 2/22/24  Riaz v. Hoffman CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMREEN RIAZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MICAH HOFFMAN,<br><br>Defendant and Respondent. | F085321<br><br>(Super. Ct. No. VCU289787)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Samreen Riaz, in pro. per., for Plaintiff and Appellant.

Medical Defense Law Group and Paul A. Cardinale for Defendant and Respondent.

-ooOoo-

Under California's workers' compensation system, when a medical evaluation is necessary to resolve disputes over the compensability of a claimed injury, such evaluations are performed by a mutually agreed upon medical evaluator or by a "qualified medical evaluator" (QME).  (See Lab. Code, §§ 4060–4062.2.)  A QME "is a licensed physician who has been appointed by the administrative director of the Division

of Workers' Compensation of the Department of Industrial Relations to evaluate medical-legal issues arising under the workers' compensation laws, including disputes regarding industrial causation." (*Zamora v. Security Industry Specialists*, *Inc*. (2021) 71 Cal.App.5th 1, 19, fn. 2, citing Cal. Code Regs., tit. 8, § 1, subd. (z); Lab. Code, §§ 139.2, 4060, 4062.1.)  The term "industrial causation" pertains to the requirement "that an injury arise out of employment or be proximately caused by employment." (*Lee v. West Kern Water Dist*. (2016) 5 Cal.App.5th 606, 624; see Lab. Code, § 3600, subd. (a).)

Samreen Riaz (plaintiff), sought worker's compensation benefits in relation to a "psychological breakdown" (her words) allegedly caused by various conditions of her employment.  Psychiatrist Micah Hoffman, M.D. (defendant), acting in the capacity of a QME, evaluated plaintiff and concluded her mental health issues were attributable to a "chronic psychotic illness, [which is] not industrial in nature in any way."  Defendant's findings and conclusions were documented in a 71-page QME report, which was later relied upon by a workers' compensation administrative law judge (ALJ).  The ALJ found there was no industrial causation for plaintiff's claimed psychiatric injury.

After receiving the QME report but prior to the adverse decision in her worker's compensation case, plaintiff attempted to sue defendant based on alleged inaccuracies and "false fabricated statements" in the report.  This appeal is taken from a judgment entered after defendant's demurrer to a second amended complaint was sustained without leave to amend.  We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a self-represented, nonnative English speaker.  Her written submissions are difficult to follow and at times unintelligible.  To clarify for the reader a few background allegations in the operative complaint, we take judicial notice (on our own motion) of the record in a related appeal:  *Riaz v. Altura Centers for Health*, F085852.  Unless otherwise indicated, all quotes are taken from the pleadings in the present matter.

2.

*Background*

Plaintiff describes herself as a "religious minority, Asian American Muslim woman, US citizen, immigrant." (These traits are relevant to claims of discriminatory treatment.) Plaintiff began practicing dentistry in the Central Valley in approximately 2013. In 2018, she was terminated from a position of employment with Altura Centers for Health (Altura).

In January 2019, plaintiff sued Altura for wrongful and retaliatory discharge. That same month, plaintiff obtained employment with Family HealthCare Network. Soon thereafter, plaintiff was allegedly subjected to "whistleblower retaliation" in the form of a "[p]lanned organized covert stalking and harassment campaign" at Family HealthCare Network. The alleged mistreatment at Family HealthCare Network allegedly occurred because of plaintiff's "whistleblowing" while employed at Altura, and due to her lawsuit against Altura, but the pleadings do not otherwise explain the supposed connection between the two employers.

The operative pleading herein contains approximately 30 pages of allegations detailing the "stalking" and "harassment" plaintiff experienced at Family HealthCare Network between January 2019 and October 2019. Notable contentions include the alleged involvement of "recruited" and "coached" dental patients who said and did things to trigger negative emotional responses in plaintiff. Her complaints about such "unlawful and fraudulent practices," and her requests to "HR to look into [the] recruited patient base," were either ignored or inadequately investigated. Plaintiff also requested that Family HealthCare Network "provide her a [w]histleblower status" for reporting about the "waste of resources" involved in the "recruited patient" conspiracy.

In March 2019 (about two months into her employment at Family HealthCare Network), plaintiff began seeing a psychiatrist (Dr. Sievert) "due to ongoing stress related to [the] serious harassment campaign at work." Plaintiff sought and received treatment from Dr. Sievert in a "private capacity," i.e., outside of the workers' compensation

3.

process. According to plaintiff's own allegations, Dr. Sievert diagnosed her with having "[d]elusional disorders."

*The Present Case*

**Facts and Allegations**

In approximately September 2019, plaintiff sought workers' compensation benefits for a psychiatric injury allegedly sustained "at work … due to unlawful covert harassment, discrimination and [r]etaliation." Exhibits to the pleadings list the alleged date of injury as "9/24/19," but the record is silent as to what occurred on that date.

The record contains little information about the workers' compensation process leading up to defendant's psychiatric evaluation of plaintiff as a QME. The pleadings allege plaintiff "filed [a] worker compensation case" with the Workers' Compensation Appeals Board (WCAB) "about August 2020," and the WCAB "referred [her] to the [d]efendant." This is very confusing, however, because the pleadings and exhibits otherwise indicate plaintiff was evaluated by defendant on June 2, 2020.

As best we can gather, Family HealthCare Network and/or its workers' compensation insurance carrier had already denied benefits or otherwise disputed the compensability of plaintiff's claimed injury by April 2020. Plaintiff was originally scheduled to be evaluated by defendant in April 2020, but the appointment was rescheduled for June 2, 2020. Subsequent to the evaluation, plaintiff filed an application for adjudication of her workers' compensation claim with the WCAB. (See Cal. Code Regs., tit. 8, § 10450; Lab. Code, § 5500 et seq.) It is unclear from the record whether plaintiff was represented by legal counsel at the time of defendant's evaluation and/or when she initiated the WCAB case.

Attached as exhibits to the pleadings are excerpts from defendant's QME report, labeled as pages 67 and 68 of 71. Select portions of these documents are quoted in the pleadings, including these statements:

4.

"100% of the psychiatric injury in this case [can be] attributed to the applicant's unfortunate chronic psychotic illness, [which is] not industrial in nature in any way." (Boldface omitted.)

"The injuries have not arisen out of employment and during the course of employment."

Approximately three months after being evaluated by defendant, in September 2020, plaintiff underwent a psychological evaluation performed by Bradley A. Schuyler, Ph.D. This was done in connection with plaintiff's lawsuit against Altura. Plaintiff discusses Dr. Schulyer's evaluation in her pleadings, and she attaches excerpts from Dr. Schulyer's report for the intended purpose of showing there were "major differences in [the] results" of his evaluation as compared to defendant's evaluation. Dr. Schulyer's diagnostic impression was (1) "Delusional Disorder, Persecutory Type" and (2) "Paranoid Personality Disorder (Provisional)." Dr. Schuler's report also states: "[I]t does not appear that her employment at Altura Centers for Health was in any way related to the disability[-]related complaints that she is presenting with in this lawsuit [i.e., the Altura lawsuit]. In fact, all indications point to the fact that the plaintiff has a *pre-existing* psychiatric disorder that has influenced her perceptions and behavior in all areas of her life." (Italics added.)

Defendant's QME report is dated June 29, 2020. Plaintiff alleges she did not become aware of the report's contents until July 2021. At that point she was represented by counsel in the WCAB case. Attached as an exhibit to the pleadings is a lengthy e-mail from plaintiff to her workers' compensation attorney dated July 25, 2021. The message includes detailed allegations regarding "many inaccuracies, incorrect, false and fabricated statements" contained in the QME report. The pleadings in this case include the same allegations.

Plaintiff is particularly aggrieved by the omission from the QME report of any discussion about a conversation she and defendant allegedly had at the outset of the evaluation. She claims defendant said to her, "Donald Trump flagged your name."

5.

When plaintiff asked defendant "to explain what flagged my name means," he allegedly replied, "[I]t means anyone who files lawsuit within 3 month of employment per Donald trump govt get flagged." (*Sic*.) Based on this alleged exchange, plaintiff accuses defendant of behaving unethically by acquiring "information pertaining to the causation of [her] disablity (reason of plaintiff harassment, discrimination, retaliation and flagging of her name for bringing legal.claim as a new govt policy of Donald Trump government) from the sources outside the QME process." (*Sic*.)

Plaintiff's numerous additional contentions allege the QME report contains false statements and intentional misrepresentations. For example, the QME report allegedly states plaintiff expressed a belief "every one is monitoring her and that they are recording her internet access and possibly controlling her thoughts." Plaintiff insists she never said "that EVERYONE is monitoring her" or that "EVERYONE [is] CONTROLLING HER THOUGHTS." She similarly denies making a "statement regarding MY EMPLOYER controlling MY MIND." Defendant is alleged to have "connected [plaintiff's statements] related to organized harassment incidences with fabricated statements 'controlling my mind' in-order to disqualify [her] legitimate concerns that [she] faced in the form of harassment, discrimination and retaliation at [Family HealthCare Network]." (*Sic*.)

Another exhibit to the operative pleading is a written decision in plaintiff's WCAB case. Dated March 23, 2022, it reflects the ALJ's reliance on the QME report in finding plaintiff "did not sustain injury arising out of and occurring in the course of employment to her psyche/stress."

**Procedural History**

On December 15, 2021, plaintiff filed a pro se complaint against defendant in the Tulare Superior Court. The complaint purported to assert six causes of action labeled as follows: (1) "Medical Malpractice"; (2) "Unprofessional Conduct (Violation of Business and Professional [*sic*] Code)"; (3) "Professional Negligence"; (4) "Fraud and

6.

Misrepresentation"; (5) "Civil RICO 18 U.S.C. § 1964"; and (6) "Vicarious Liability." (Boldface and some capitalization omitted.)

On February 18, 2022, defendant demurred to the complaint and filed a separate motion to strike portions of the same. We know this only because the event is listed on the trial court's register of actions, which is included in the record on appeal. Plaintiff evidently chose not to designate for inclusion in the record any of defendant's moving papers, nor any of the trial court's rulings.

The appellate record contains plaintiff's opposition to defendant's first demurrer, which she filed on February 28, 2022. The 38-page document far exceeds the page limit established by rule 3.1113(d) of the California Rules of Court. There is nothing to indicate plaintiff requested or received permission to file an oversized brief.

The trial court sustained the (first) demurrer with leave to amend. However, there is nothing in the record to indicate whether the trial court considered plaintiff's opposition on the merits or instead exercised its discretion not to consider it because of its excessive length. (See Cal. Rules of Court, rules 3.1300(d), 3.1113(g).) Defendant's motion to strike was presumably denied as moot.

In April 2022, plaintiff filed a first amended complaint. This pleading purported to assert *12* causes of action, which were labeled as follows: (1) "Fraud claim"; (2) "UCL claim"; (3) "Medical Malpractice"; (4) "Willful and Wanton Negligence/ Professional Negligence"; (5) "Unprofessional Conduct (Violation of Business and Professional [*sic*] Code)"; (6) "Vicarious Liability"; (7) "Defamation"; (8) "Breach of Contract"; (9) "Personal Injury"; (10) "Intentional Infliction of Emotional Distress"; (11) "Retaliation in Violation of Labor Code § 1102.5"; (12) "For Disability Discrimination in Violation of Government Code Section 12940(a)." (Boldface and some capitalization omitted.)

Defendant demurred to the first amended complaint and filed another motion to strike. The record does not contain an opposition to the second demurrer, nor is one

7.

listed in the register of actions. According to the register of actions, plaintiff did file an opposition to the motion to strike. The trial court sustained the demurrer with leave to amend and (presumably) denied the motion to strike as moot.

In July 2022, plaintiff filed a 94-page second amended complaint (plus 40 pages of exhibits). This version purported to assert the same 12 causes of action as alleged in the first amended complaint. Reference to Government Code section 12940 was deleted from the heading for the 12th cause of action, which was now alleged to be asserted "due to discrimination in violations of public policy FEHA ACT and UNRUH ACT." (*Sic*.)

Defendant filed a third demurrer and motion to strike, which were scheduled to be heard on September 27, 2022. On September 19, 2022, defendant filed a notice of plaintiff's failure to timely oppose the demurrer or motion to strike. According to the register of actions, no oppositions were ever filed.

The trial court sustained defendant's third demurrer without leave to amend. The motion to strike was denied as moot. At defendant's request, we permitted augmentation of the record on appeal to include the six-page ruling.

In reliance upon *King v. CompPartners*, *Inc*. (2018) 5 Cal.5th 1039 and *Charles J. Vacanti*, *M.D.*, *Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, and other authorities, the trial court determined nearly all of plaintiff's claims were barred by the workers' compensation exclusivity rule. The trial court separately analyzed the 12th cause of action and found no cognizable claims were stated under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA) or the Unruh Civil Rights Act (Civ. Code, § 51 et seq.). Leave to amend was denied based on plaintiff's multiple failures to cure the pleading defects and failure to show the defects were curable.

On October 4, 2022, plaintiff filed a premature notice of appeal. On October 25, 2022, the trial court entered a judgment in favor of defendant and dismissed the action with prejudice. Plaintiff subsequently filed a timely notice of appeal.

**DISCUSSION**

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) However, "plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.) "We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." (*Ibid.*)

"[A] demurrer 'admits the truth of all material factual allegations in the complaint …; the question of plaintiff's ability to prove those allegations, or the possible difficulty in making such proof does not concern the reviewing court.' [Citations.]" (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 922.) The complaint is liberally construed, but no weight is given to "'contentions, deductions or conclusions of fact or law'" therein. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment. The plaintiff bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp.*, *supra*, 4 Cal.5th at p. 162.)

Defendant argues plaintiff forfeited her challenges to the judgment by failing to oppose his demurrer to the second amended complaint. Given the particular circumstances, we agree. "'A judgment or order of the lower court is *presumed correct*." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is axiomatic that arguments not raised in the trial court are forfeited on appeal." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.) Therefore, "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but

was not made in the trial court." (*In re S.B*. (2004) 32 Cal.4th 1287, 1293.) Put differently, "we ignore arguments, authority, and facts not presented and litigated in the trial court" and treat them as waived or forfeited. (*Bialo v. Western Mutual Ins. Co*. (2002) 95 Cal.App.4th 68, 73.)

In California, "self-represented litigants are held to the same standard of knowledge of law and procedure as an attorney." (*Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 406, fn. 5.) "Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) Although plaintiff filed an excessively long opposition to the first demurrer, which is the legal equivalent of an untimely opposition (Cal. Rules of Court, rule 3.1113(g)), she apparently did not oppose the second demurrer and clearly failed to oppose the third demurrer. The filing of her amended complaints superseded the original version, "which cease[d] to perform any function as a pleading." (*Meyer v. State Board of Equalization* (1954) 42 Cal.2d 376, 384.) Moreover, the first and second amended complaints asserted twice as many purported causes of action as alleged in the original.

"In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack." (*JRS Products*, *Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.) Accordingly, arguments not raised in an opposition to a demurrer are forfeited. (E.g., *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192.) Completely failing to oppose a motion likewise forfeits any subsequent challenges to the motion ruling. (*Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602.)

Defendant separately contends plaintiff's opening brief (she did not file a reply brief) should be disregarded for failure to comply with various rules. This argument is also well taken. "'The reviewing court is not required to make an independent,

unassisted study of the record in search of error or grounds to support the judgment…. [E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.'" (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.)

"[T]he appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) "In addition, citing cases without any discussion of their application to the present case results in forfeiture." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) "We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Ibid.*)

Notwithstanding the issues of forfeiture and inadequate briefing, we note the trial court's analysis appears correct. "The workers' compensation exclusivity rule is the rule, embodied in Labor Code sections 3600, 3601 and 3602, that with certain exceptions, an injury sustained by an employee arising out of and in the course of his or her employment is compensable by way of a workers' compensation insurance award only, not by a tort judgment." (*Lee v. West Kern Water Dist.*, *supra*, 5 Cal.App.5th at p. 624.) The exclusivity rule extends to "injuries '"collateral to or derivative of"'" the harm allegedly suffered in the workplace, including "injuries stemming from conduct occurring in the workers' compensation claims process." (*King v. CompPartners, Inc.*, *supra*, 5 Cal.5th at pp. 1051, 1052.)

As explained in *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, *supra*, 24 Cal.4th 800, "injuries arising out of and in the course of the workers' compensation claims process fall within the scope of the exclusive remedy provisions because this process is tethered to a compensable injury. Indeed, every employee who suffers a workplace injury must go through the claims process in order to recover compensation." (*Id*. at p. 815.) Claims seeking economic damages for the mishandling of a workers'

11.

compensation claim, even where fraud is alleged, may be preempted by the workers' compensation exclusivity rule. (*Id*. at pp. 812, 814–815.) "Likewise, claims seeking compensation for services rendered to an employee in connection with his or her workers' compensation claim fall under the exclusive jurisdiction of the WCAB." (*Id*. at p. 815.)

In *King v. CompPartners*, *Inc*., *supra*, 5 Cal.5th 1039, the exclusivity rule was held to apply to claims against physicians who render services in the worker's compensation utilization review process, "under which a [reviewing physician] assesses a treating physician's recommendation according to a schedule that establishes uniform guidelines for evaluating treatment requests." (*Id*. at p. 1047.) If an alleged injury "arose out of and in the course of utilization review—a statutorily required part of the workers' compensation claims process[—]to which [the claimant] would not have been subject had he [or she] not suffered a work-related … injury," related claims fall within the workers' compensation exclusivity rule. (*Id*. at p. 1053.) In other words, "the workers' compensation system provides the exclusive remedy for otherwise compensable injuries stemming from alleged mistakes in the utilization review process." (*Id*. at p. 1060.) Here, the trial court reasoned claims arising from alleged mistakes in the process of a required evaluation by a QME is an analogous scenario.

Plaintiff contends defendant's allegedly tortious conduct negatively impacted the resolution of her workers' compensation claim. She does not allege defendant physically injured her through malpractice or intentional misconduct, but rather that his QME report influenced the outcome of her WCAB case. Plaintiff's causes of action are undoubtedly based on "injuries stemming from conduct occurring in the workers' compensation claims process." (*King v. CompPartners*, *Inc*., *supra*, 5 Cal.5th at p. 1052.) The available remedies are provided for within that same process, e.g., the ability to dispute the reliability of defendant's QME report in the proceedings before the ALJ in her WCAB case.

"[A]s a general rule, where a physician is hired by a third party to examine plaintiff and report on the results of that examination, the physician is not liable to plaintiff for negligence in conducting the examination and making the report."  (*Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1471, citing *Felton v. Schaeffer* (1991) 229 Cal.App.3d 229, 235 and *Keene v. Wiggins* (1977) 69 Cal.App.3d 308, 313–314.)  We have found no cases in which a workers' compensation claimant was permitted to file a civil action against a QME based on the QME's diagnosis and/or the contents of the QME's report.

As for the 12th cause of action (mislabeled as a second 11th cause of action in the operative pleading), the FEHA component of plaintiff's disability claim is meritless since no employment relationship is alleged or suggested as between her and defendant.  Some cases hold "individuals and entities who are not the plaintiff's employer may be liable under FEHA for aiding and abetting the plaintiff's employer's violation of FEHA."  (*Smith v. BP Lubricants USA Inc*. (2021) 64 Cal.App.5th 138, 146.)  However, plaintiff's first amended complaint alleges her employment with Family HealthCare Network had already been terminated when she was referred to defendant for a psychiatric evaluation.  Plaintiff's deletion of the allegation from the operative complaint does not allow her to escape its detrimental effect.  (See *Deveny v. Entropin, Inc*. (2006) 139 Cal.App.4th 408, 425 ["plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers"].)  The element of being "subjected to an adverse employment action because of the disability or perceived disability" is missing.  (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159–160; see *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1051 ["an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable" under FEHA].)

The alternative theory for the 12th cause of action is also deficient.  "The Unruh Civil Rights Act only applies to 'business establishments' that are 'generally open to the

public' [citation], and mandates that those establishments 'serve all persons without arbitrary discrimination.' [Citation.] The Unruh Civil Rights Act therefore does not cover 'discriminations other than those made by a "business establishment" in the course of furnishing goods, services or facilities to its clients, patrons or customers.'" (*Smith v. BP Lubricants USA Inc*., *supra*, 64 Cal.App.5th at p. 149.) Plaintiff fails to explain how defendant, sued as an individual physician whose evaluation of her was arranged by a third party, qualifies as a "business establishment." (Civ. Code, § 51, subd. (b).) Furthermore, because the pleadings allege a relationship arising in a workers' compensation context rather than "'that of the customer in the customer-proprietor relationship'" (*Smith*, at p. 149), the exclusivity rule would again apply. Also, her allegations of being "treated … differently" because of defendant's unspecified perception of her "race, color, religion, ancestry, national origin, citizenship status, medical condition disability, [and] primary language" are too conclusory to state an actionable claim.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.


PEÑA, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.


14.